FRANK S. BIGELOW, and another,

*vs.*

LEVI R. BIGELOW, and others.

| 93 | 439 |
| s95 | 18 |
| f95 | 349 |

Somerset. ' Opinion January 2, 1900.

*Mortgage. Conditional Judgment. Consideration. Evidence. Parol Gift of Land. R. S., c. 90.*

1. In an action to foreclose a mortgage of land between the original parties, or those having no superior rights, the mortgagor is not estopped from denying the consideration. The reason is that the debt is the principal thing, the mortgage is only an incident.

2. In such case, when the note is shown to be without consideration, a mortgage given to secure it cannot be enforced.

3. In a real action to foreclose a mortgage, the plaintiff, as assignee of the original mortgagee, put in evidence the defendant's note of $1000 and the mortgage securing the same, containing a clause,—"this mortgage is given to secure part of the purchase money of said premises." He also put in evidence, as part of the same transaction, a warranty deed from his assignor to the defendant of the same premises, a farm valued at $2500, and dated two days prior to the mortgage. The defendant offered evidence, without its being objected to, tending to show that the grantor in the warranty deed, who was the defendant's uncle, had agreed to give the farm to the defendant on condition that he would move there. Thereupon the defendant claimed that the giving the deed was the consummation of the gift or contract; and that therefore the mortgage given afterwards was without consideration and void. The jury adopted the defendant's contention and rendered a verdict accordingly in his favor. *Held;* that such promise to give the defendant the farm, if made, must be regarded, under the evidence disclosed by the defendant, merely as a voluntary executory promise to make a gift in the future, and is not a valid contract on the part of the promisor; *also,* that the verdict must be set aside and new trial granted.

4. A mortgagee to foreclose a mortgage of land by an action at law must first obtain, under our statute, a conditional judgment; and before such a judgment can be rendered, the amount of the indebtedness secured by the mortgage must be determined and adjudged by the court. If there is no indebtedness, he cannot have such a judgment any more than if it had once existed but had since been paid.

It is, therefore, competent in such an action between the original parties, or those having no superior rights for a defendant, to show by parol evidence, or otherwise, that the mortgage was originally without consideration.

5. Upon the question as to whether the mortgage in this suit was with or without consideration, evidence was introduced on the part of the defense to the effect that sometime before the conveyance and mortgage back were made, the mortgagee sent word to the mortgagor, his nephew, that if he would leave the mill, in which he was then employed and go upon a farm, the premises subsequently mortgaged, he, the mortgagee, would make the mortgagor a present of it; that this message was delivered to the mortgagor, who accepted the proposition and acted upon it by leaving his former residence and employment and moving upon the farm. Subsequently the mortgagee made and delivered to the mortgagor a deed of the premises and requested the latter to call at a designated place and execute the mortgage back. This was done by the mortgagor a few days later, but as a part of the same transaction. This was the mortgage in suit.

The defendant claimed that, under these circumstances, the mortgagor was the equitable owner of the mortgaged premises before the delivery of the deed to him and that he could have compelled a conveyance to him of the farm; and that consequently, the mortgage given back at the time of the conveyance, or as a part of the same transaction, was without consideration.

*Held;* that these facts do not constitute a valid contract upon the part of the mortgagee. It lacks the essential element of a consideration. The condition that the mortgagor should leave his employment and move upon the farm, was neither a benefit to the promisor nor an injury to the promisee, and could not have been understood as such by the parties. The promise upon the mortgagee's part must, therefore, be regarded merely as a voluntary executory promise to make a gift in the future.

6. A parol gift of land, accompanied by possession by the donee, will be enforced in equity, when the donee has been induced by the promise of the gift to make valuable improvements to the land of a permanent nature, and to such an extent as to render a revocation of the gift unjust, inequitable and a fraud upon the donee.

But it must clearly appear that the acts relied upon as part performance were done with a view to the performance of the contract; but slight and temporary erections for the tenant's own convenience give no equity.

*Held;* that the circumstances of this case do not bring it within the principle as above stated. The expenditures made by the promisee were not provided for by any stipulation in the alleged promise. It does not clearly appear that these expenditures were induced by or made in consequence of the promise; but however this may be, they were of such a trivial character, in comparison with the value of the property, and the repairs were of such a temporary nature, that they do not raise an equity in behalf of the donee.

The mortgagor, therefore, prior to the delivery to him of the deed was not the equitable owner of the property and could not have compelled a conveyance of it; consequently the note and mortgage given back shortly after the delivery of the deed, and as a part of the same transaction, were not without consideration.

These questions might perhaps have been more concisely raised upon proper exceptions; but still they are open to the plaintiffs upon their motion, because, the facts testified to by the witnesses for the defense, and the inferences properly deducible therefrom, did not warrant the verdict rendered by the jury.

ON MOTION BY DEFENDANTS.

This was a real action to foreclose a mortgage given by Levi R. Bigelow to John Harlow Bigelow for $1000 and annual interest, dated April 29, 1889, acknowledged May 8, and recorded October 5, 1889.

The mortgaged property is a farm in Smithfield, Somerset county, containing two hundred and forty acres of land with buildings, and was purchased by John Harlow Bigelow of R. H. and J. Palmer Merrill, by deed dated June 7, 1888, for $2500, and conveyed by him to the defendant Levi R. Bigelow by deed dated April 27, 1889.

May 27, 1891, the defendant Levi conveyed one undivided-half of the farm, subject to the mortgage given by him, as before stated, for $1000, to George M. and Harlow Bigelow, two of his sons, and the other defendants in this action.

March 18, 1896, John Harlow Bigelow assigned the mortgage to Frank S. and James S. Bigelow, the plaintiffs of record in this suit.

The case was tried at the March term 1897, of this court, sitting at nisi prius, in Skowhegan, and a verdict rendered for the defendants; whereupon the plaintiffs filed a motion to set the verdict aside as against the law and the evidence.

The case was submitted to this court and argued in writing. The briefs of counsel were received by the law court in May, 1898.

The plaintiffs contended that the case shows the following facts: John Harlow Bigelow, ninety years old, had spent the greater part of his active business life in the employ of the late Governor Coburn, as manager of his farm and household affairs in Skowhegan, and by prudence and economy had accumulated something more than was required for the wants of his declining years. He was also possessed of numerous relatives, who were not without some knowledge of his pecuniary situation; among whom were Levi R. his nephew, one of the defendants in this suit.

It is agreed by both sides that some time in the month of June, 1888, two of these sons came to the old gentleman, in Skowhegan, and had an interview with him in relation to money matters.

He had never seen them before and only knew them as they introduced themselves, and had not seen their father for fourteen years. As to what took place at this interview, the parties differ, but Harlow says that they came to borrow $5000, representing to him that they wished to purchase a boarding-house in Augusta, called the Hotel Bigelow, then kept by one of the boys; that their father, who for many years had been an employee in the Lockwood mill, at Waterville, was getting old and out of health; that they intended to run a grocery store in connection with the boarding-house; and if they could raise the money to do this, their father would come out of the mill and drive the delivery wagon, believing that the outdoor work would benefit his health.

To this proposition Harlow told them that he had no such sum of money to lend, and if he had he wouldn't loan it to them to be used for any such purpose; that they knew nothing about the business and would make a failure if they undertook it; that their father, Levi R., was no business man, was unused to such work and wholly unfitted to enter into such an enterprise. He told them, however, that he knew of a farm for sale which he believed could be bought at a good trade, and, if Levi wanted to get out of the mill, he didn't know but he would buy it and let him move onto it.

Either on the day of this conversation or one subsequent Harlow called upon the Merrills, owners of the farm, and went with J. Palmer Merrill to Smithfield, to see the property. On their way back from Smithfield, they met two of Levi's boys, and while there in the road, Harlow and Mr. Merrill struck the trade for the farm, and Harlow told the boys that their father might move onto the farm.

About the first of July, 1888, Levi moved to the farm in Smithfield and lived there till April 27th, 1889, before he received a deed from his uncle or gave the mortgage back.

On April 27th, 1889, Harlow went to the office of Merrill and Coffin in Skowhegan, and had a deed of the farm made to Levi R.

and at the same time had a mortgage and note drawn running back to himself, for $1000, payable in five years with interest annually.

On the same day he carried the deed to Smithfield to Levi and at the same time told him that he had had the mortgage and note made, and that he, Levi, would have to come to Skowhegan to sign them before a justice of the peace.

On the 8th day of May, 1889, Levi R. came to Skowhegan, called upon his uncle Harlow and told him that he had come down to sign the mortgage, and together they went to Mr. Coffin's office and then and there Levi R. executed the mortgage.

The formal execution and delivery of the mortgage in question, and the non-payment under it, was not denied, but the defendant claimed that the mortgage was of no effect, that it is, at least, equitably void; and that by virtue of the statute, making all equitable defenses available, in an action at common law, the mortgage deed could not be supported because without consideration; that a mortgage deed is necessarily and always collateral merely to supposed indebtedness; and that where there is no debt there never can be any valid or enforceable mortgage.

To show that the mortgage is without consideration, and has no debt to support it, the defendants relied upon the following legal rules and the facts as adduced from the testimony introduced by them:—

That in June, 1888, nearly a year before the mortgage deed (the premises in question being then owned by a third party) the plaintiffs' assignor, John Harlow Bigelow, through the defendant's sons, proposed to the defendant a contract by which the defendant on his part was to abandon his existing business as employee in the Lockwood cotton mill, and his existing residence which was Waterville, and was to move his home and family to Smithfield; that he was to equip the farm at his own expense with suitable farming tools and machinery, and was thereafter to carry on the farm in question in Smithfield; that, provided he did these several things and in consideration thereof, the old gentleman (who was the defendant's uncle, and well to do,) would buy him this particular farm and would make him a present of it in toto; that the de-

fendant on his part agreed to do all these things, and, in fact, did abandon his previous business and home, and move on to this farm with his family about the twelfth day of July, 1888, providing himself with suitable equipment therefor at the cost of over four hundred dollars, and thereafter carrying on the place; that, as matter of law, this constituted a valid and enforceable contract between the parties by virtue of which at common law the defendant, having fully performed his part of the contract, could have compelled at any time the plaintiff to procure and deed to him this farm according to the agreement, except for the statute of frauds; that these mutual agreements and their actual performance by the defendant would make the deed of the farm, when executed and delivered, no longer in the eye of the law a gift without consideration, but an executory contract with full and executed legal consideration to support it; that being thus a contract, and not a gift, the mere delivery of possession to the defendant, even uncoupled with the various expenditures and improvements made by the defendant at his own cost on the strength of the contract, would take the case out of the statute of frauds and support a bill brought by the defendant against the old gentleman for specific performance, in accordance with a well settled line of authorities which may be found fully summed up in White & Tudor's Leading Cases in Equity, 4th Am. Ed. Vol. 1, Part 2, pp. 1045–8; that even if the agreement by the old gentleman had had no consideration to support it, and had been a mere naked promise to execute a gift of the land, even in such case the transfer of possession, followed by actual expenditures, as here, on the strength of such promise, would then convert the promise from a mere nudum pactum into an agreement enforceable in equity, and full right to specific performance by the defendant against the promisor would still lie; that, therefore, on the twelfth day of July, 1888, and at all times thereafter (the old gentleman having meanwhile purchased the farm in question in his own name) the defendant was equitably entitled at every instant to a full and absolute deed of the whole farm, and that when the old gentleman, nearly a year afterwards, on the 27th day of April, 1889, (the defendant still being in possession) actually

delivered to the defendant the deed which he had promised, he was only doing what equity would have obliged him to do, and what the defendant himself was legally entitled to receive; that neither then nor at any moment after the twelfth day of July, 1888, could any debt arise from the defendant to the old gentleman by virtue of the delivery of this deed, or the so-called gift of this land; that the doing by the old gentleman of what he was legally or equitably obliged to do, or the receiving by the defendant of the deed or gift to which he was legally entitled could in no case constitute a debt or consideration by which this mortgage would be supported or enforced; that the evidence showed no pretense of any subsequent, new or fresh consideration to support the mortgage, and that the mortgage, therefore, was void.

*E. F. Danforth and S. W. Gould,* for plaintiffs.

The seal imports a consideration, and the grantor is estopped to deny it. (English cases.) *Lainson* v. *Tremere,* 1 A. & E. 792; *Harding* v. *Hambler,* 3 M. & W. 279; *Leming* v. *Skirrow,* 7 A. & E. 157; *Bowman* v. *Taylor,* 2 A. & E. 278. (American cases.) *Myrick* v. *Dame,* 9 Cush. 254; *Western Railroad Corp.* v. *Babcock,* 6 Met. 353; *Hayes* v. *Kyle,* 8 Allen, 300; *Billerica* v. *Carlisle,* 2 Mass. 159; *Sumner* v. *Williams,* 8 Mass. 200; *Mather* v. *Corliss,* 103 Mass. 568; *The United States* v. *Linn,* 15 Peters, 290; *Curtis* v. *Clark,* 133 Mass. 510.

Levi R. voluntarily acknowledged the mortgage and thereby gave authority to spread it upon the records of Somerset county as notice to all the world that he had received the consideration, and that the land was holden for the debt, and by this act he is estopped to deny it.

*Weld* v. *Farmington,* 68 Maine, 307; *Eames* v. *Gray,* 61 Maine, 405; *Van Valkenburgh* v. *Smith,* 60 Maine, 98; *Chapman* v. *Searle,* 3 Pick. 38; *Jewett* v. *Torrey,* 11 Mass. 219; *Foster* v. *Clark,* 19 Pick. 329; *Wheelock* v. *Henshaw,* Id. 341; *Wing* v. *Chase,* 35 Maine, 260; *Commonwealth* v. *Griffith,* 2 Pick. 18; *Pierce* v. *Indseth,* 106 U. S. 548; *Comstock* v. *Smith,* 13 Pick. 116; *Nash* v. *Spofford,* 10 Met. 192; *Dyer* v. *Rich,* 1 Met. 180; *Baxter* v. *Bradbury,* 20 Maine, 260; *Tyler* v. *Hall,* 106 Mo. 313, (27 Am.

St. Rep. 337); *DeFrieze* v. *Quint*, 94 Cal. 653, (28 Am. St. Rep. 151); *Reinhard* v. *Virginia Lead Mining Co.*, 107 Mo. 616, (28 Am. St. Rep. 441.)

The court will reject evidence in itself illegal, notwithstanding the admissions or omissions of the litigants. *Shaw* v. *Roberts*, 2 Starkie, 455.

Parol evidence is inadmissible to vary a written agreement, which is clear in its terms, and expresses the result of the conversation of the parties to it. *Pike* v. *McIntosh*, 167 Mass. 309; *Batchelder* v. *Queen Insurance Co.*, 135 Mass. 449; *Flynn* v. *Bourneuf*, 143 Mass. 277; *Stevens* v. *Haskell*, 70 Maine, 202; *Shaw* v. *Shaw*, 50 Maine, 94; *Stoyell* v. *Stoyell*, 82 Maine, 332; *Knowlton* v. *Keenan*, 146 Mass. 86; *Durkin* v. *Cobleigh*, 156 Mass. 108.

When from the nature of the instrument, the whole contract is presumed to be reduced to writing, parol evidence of any contemporaneous agreement is inadmissible if it contradicts, adds to, or varies the written contract. *Buchtel* v. *Mason Lumber Co.*, 1 Flippin (Mich.) 640.

Although a failure of consideration is a sufficient answer to a suit brought on a sealed instrument on the principles of equity, as now adopted by the statutes or common law in most of the states of the Union, yet a want of consideration is not because the seal imports a consideration, or more properly speaking renders a consideration superfluous,—and binds the parties by force of the natural presumption, that an instrument executed with so much deliberation and solemnity is founded upon some sufficient cause. 1 Smith's Leading Cases, Part 2, p. 749, 8th Am. Ed. *Walker* v. *Walker*, 13 Ired. (N. C.) 335; *Wing* v. *Chase*, 35 Maine, 260.

*O. D. Baker and F. L. Staples*, for defendants.

Sitting: Peters, C. J., Haskell, Wiswell, Strout, Savage, JJ.

Wiswell, J. This is a real action, brought, it is said in the plaintiffs' brief, to foreclose a mortgage. The plaintiffs made out a prima facie case by introducing in evidence a mortgage given by

Levi R. Bigelow, one of the defendants, and under whom the other two defendants claim, to J. Harlow Bigelow, dated April 27, 1889, acknowledged and recorded, to secure a note for one thousand dollars, together with the note, both of which had been duly assigned and transferred to the plaintiffs.

The defense was that the mortgage was not enforceable because it was without consideration;—that, in fact, there was no indebtedness owed by the mortgagor to the mortgagee at the time of the execution of the mortgage.

The verdict was for the defendants, and the case comes here upon the plaintiffs' motion for a new trial for the reason that the verdict was contrary to the weight of the evidence and the law. There are no exceptions.

The first contention, upon the part of the plaintiffs, is that parol evidence was inadmissible to show a want of consideration, or the existence of an indebtedness, which the mortgage under seal acknowledged and purported to secure; and that, although it was admitted without exception, it should be regarded as ineffectual for the purpose for which such evidence was offered; and that consequently the verdict was erroneous even upon the defendants' theory.

The defense was not fraud or duress, nor that the consideration was illegal or against the policy of the law, nor that the note had been paid, but that there never was any indebtedness from mortgagor to mortgagee, or consideration for the note or mortgage: the question is, therefore, can a mortgage under seal which acknowledges an indebtedness and which purports to secure such indebtedness, be contradicted by parol evidence to the extent of showing a want of original consideration so that the mortgage cannot be enforced.

The plaintiffs' counsel have cited many cases to the effect that a seal upon an instrument conclusively imports a consideration, or, that, at least, it estops the covenantor from denying the consideration. But we do not think that this principle applies to a mortgage in an action brought to foreclose the mortgage, so as to prevent inquiry into the existence or non-existence of a debt which

the mortgage purports to secure.    We mean, of course, between the original parties or those having no superior right.    The reason is, that the indebtedness is regarded as the principal thing, the mortgage only as an incident.    In order for a mortgagee to commence a foreclosure of a mortgage in an action at law he must first obtain, under our statutes, a conditional judgment; before such a judgment can be rendered, the amount of the indebtedness must be determined and adjudged by the court.    If, as a matter of fact, there is no indebtedness, we do not see how a plaintiff can have such a judgment any more than if the obligation, once valid and real, had since been paid.    The question as to the consideration of the principal thing, the note, may be inquired into between the original parties, or between those having no superior right; and when, under these circumstances, the note is shown to have been without consideration, the mortgage purporting to secure such a note must become unenforceable.    This has long been the settled law in Massachusetts.    *Wearse* v. *Peirce*, 24 Pick. 141; *Hannan* v. *Hannan*, 123 Mass. 441.

" Want of consideration is, of course, a good defense ; for in such case there is nothing on which to found a conditional judgment, and parol evidence is admissible to show that no debt ever existed between the parties to the mortgage." 2 Jones on Mortgages, § 1297.

The next question is, whether upon all the evidence in the case the jury was authorized in its finding, upon which the verdict must have been based, that the mortgage, which the plaintiffs were seeking to foreclose, was without consideration.

The defendants' contention was substantially this:    In June, 1888, Levi R. Bigelow, the mortgagor, and a nephew of John Harlow Bigelow, the mortgagee, was living in Augusta and working in a cotton mill in Waterville.    During the latter part of that month two of his sons were temporarily at Skowhegan where they met and had a conversation with their great uncle, John Harlow Bigelow, during the course of which he inquired concerning the health of his nephew, Levi ; and upon being informed by the young men that their father was not in very good health, made a suggestion

relative to his leaving the mill and moving upon a farm in a neighboring town that he had in mind.

The testimony of Frank Bigelow, one of the mortgagors' sons with whom the conversation was had relative thereto, is as follows: "We drove up in a team, found him (Harlow) at the end of the stable in a flower garden. I got out and introduced myself and he asked me about my lameness. I was on canes at that time; inquired how my father was and asked if he was in the mill at work. I told him he was and he says to me, do you suppose that your father would come out of the mill and go onto a farm. I know where there is a farm that can be bought cheap. A good farm but run out some; it is the Marston place in Smithfield, owned here in Skowhegan by Mr. Merrill; he got it through a mortgage. Wanted to know when I was going down home. Told him sometime during the week; wanted that I should stop at Waterville and tell father what he said. Q. What, if anything, did your uncle say about deeding the farm to your father? A. He said that, if he would come out of the mill and go onto the farm, he would make him a present of it."

This message was carried by Frank to his father, who expressed himself as pleased with the suggestion, but who said that, before he made any move and gave up his employment in the cotton mill, he wanted to be sure that the arrangement was to be made; and thereupon he sent Frank and another son to Skowhegan again to see the uncle and obtain further information upon the subject. The two sons went to Skowhegan, saw their father's uncle, and explained to him their father's attitude; thereupon the uncle at once went to see the owner of the farm in question, bargained with him for it and informed the young men of what had been done, and requested them to tell their father that he had bought the farm, and that he had better move onto it at once so as to cut the hay. Frank, testifying as to this conversation, says: "Uncle Harlow said tell your father that he had bought the farm and would make him a present of it."

This word was carried to Levi, who shortly afterwards left his employment in the cotton mill and, on July 12th, 1888, moved

onto the farm and went into possession of it.   He brought to the farm certain farming tools and some horses and stock, and made some rather slight repairs upon the building at a cost, he says, of about fifty dollars.   Harlow Bigelow on the day following his second interview with Frank concluded his purchase of the farm by taking a deed thereof to himself.   In the spring following, on the 27th of April, Harlow went to Levi's house with a deed of the farm running to Levi, duly signed, executed and acknowledged, which he then and there delivered to him and told him that he wanted him as soon as convenient to call at a certain office and there sign a note and mortgage for one thousand dollars.   Levi admits upon cross-examination that he was told by Harlow Bigelow at the time of the delivery of the deed that, as a part of that transaction, he was to go to Merrill & Coffin's office and sign a mortgage and note for one thousand dollars.   A few days later he, Levi, did go to the office and executed the note and mortgage in question;—the latter contains this clause:   "This mortgage is given to secure part of the purchase money of said premises."

Assuming this to be a true statement of the facts, and although it is stoutly denied by the plaintiffs, we think that a jury might have been authorized in finding that the facts were substantially as above narrated,—was Levi R. Bigelow, prior to April 27th, 1898, when the deed to him was delivered, the equitable owner of the farm and entitled as of right to a conveyance thereof so that he could have successfully maintained a bill in equity for a specific performance?   If so, the defendants' theory that the mortgage was without consideration is correct.

The defendant's contention is, that these facts disclose a valid and binding contract upon the part of Harlow Bigelow, for a valuable consideration, to convey the farm to Levi; and that the partial performance by Levi was of such a character as to take the parol contract out of the statute of frauds.

There is no question that a parol agreement for the conveyance of land may be enforced in equity in behalf of a vendee whose partial performance had been such that fraud would result to him unless the vendor be compelled to perform on his part.   It was so decided by this court in *Woodbury* v. *Gardiner*, 77 Maine, 68.

But even upon the plaintiffs' testimony we cannot regard the alleged promise of Harlow Bigelow to make Levi a present of the farm as a valid contract upon the former's part. It lacks the essential element of a consideration. True, the testimony of Frank Bigelow was that Harlow said, if his father would come out of the mill and go upon the farm, he would make him a present of it. But we do not think that this comes within the broadest definition of a consideration. It was neither a benefit to the promisor nor an injury to the promisee. The case shows no circumstances from which it can be inferred that Harlow would be benefited by Levi's moving onto the farm. It could not have been understood to be such by the parties. Nor was this an injury to Levi;—it could not have been understood as such. Levi's health was rather poor, so one of his sons informed Harlow at the first interview, and the suggestion as to his moving upon the farm was made, intended and acted upon, we are forced to believe, as a benefit to Levi. The subsequent conduct of the parties, when the deed was made and the mortgage taken back as a part of the same transaction, confirms us in this belief that they did not suppose that a binding contract had been made.

The promise upon Harlow's part, therefore, must be regarded merely as a voluntary executory promise to make a gift in the future. Such a promise, so long as it remains unexecuted, can not ordinarily be enforced.

But, it is also undoubtedly true, as urged in behalf of the defense that, under some circumstances, even a parol promise to make a gift of land will be enforced in equity. The principle is thus stated in the case of *Neale* v. *Neale*, 9 Wallace, 1: " And equity protects a parol gift of land, equally with a parol agreement to sell it, if accompanied by possession, and the donee, induced by the promise to give it, has made valuable improvements on the property. And this is particularly true where the donor stipulates that the expenditure shall be made and by doing this makes it the consideration or condition of the gift." In that case the promise to give the real estate was made to a person who was about to marry the promisor's son, and it was upon the condition that she

should erect with her own means a suitable dwelling-house upon the property. This condition was expressly made the consideration of the promise to give, and upon its performance by the promisee she was certainly entitled to performance on the part of the promisor.

No such state of facts exist in this case;—there was no stipulation that any expenditure should be made for repairs. But we do not hold that this is necessary in order to make such a promise enforceable. We think that the following is a correct statement of the rule as deduced from the great weight of authority. A parol gift of land, accompanied by possession by the donee, will be enforced in equity, when the donee has been induced by the promise of the gift to make valuable improvements to the land of a permanent nature and to such an extent as to render a revocation of the gift unjust, inequitable and a fraud upon the donee. *Green* v. *Jones*, 76 Maine, 563. See the cases collected in the note to *Lester* v. *Foxcroft*, White & Tudor's Leading Cases in Equity, Vol. 1, p. 1047 ; and the note to *Anderson* v. *Green*, 23 Am. Dec. 417, (7 J. J. Marshall, 448.)

But it must clearly appear that the acts relied upon as part performance were done with a view to the performance of the contract. *Tilton* v. *Tilton*, 9 N. H. 385. And slight and temporary erections for the tenant's own convenience give no equity. *Young* v. *Glendenning*, 6 Watts, 509.

In the case under consideration, as we have already seen, the expenditures made by the promisee were not provided for by any stipulation in the alleged promise. Nor do we think that it clearly appears that these expenditures were induced by or made in consequence of the promise. It seems to us from the nature and extent of these expenditures for repairs upon the buildings that they were made for the convenience of the mortgagor, who was expecting to occupy them, at least, for an indefinite period of time, and that the expenditures would have been just as likely to have been made under the facts claimed by the plaintiffs as under those relied upon by the defendants.

But even if it were otherwise, and it could be said that the ex-

penditures for repairs were induced by and made in consequence of the alleged promise, they were in the opinion of the court, of such a trivial character, in comparison with the value of the property, which cost the alleged donor some twenty-three hundred dollars, and the repairs were of such a temporary nature, that they do not in the opinion of the court raise an equity in behalf of the donee. The revocation of the promise to make a gift would not, under all of the circumstances of the case work such a hardship or impose a fraud upon the promisee, as to entitle him to a decree in equity compelling a conveyance.

In our view of the case, therefore, the mortgagor, prior to the delivery to him of the deed, was not the equitable owner of the property and could not have compelled a conveyance of it to himself; consequently the note and mortgage given back shortly after the delivery of the deed, and as a part of the same transaction, was not without consideration.

These questions might perhaps have been more concisely raised upon proper exceptions; but still they are open to the plaintiffs upon their motion, because, in our view of the case the facts testified to by the witnesses for the defense, and the inferences properly deducible therefrom, did not warrant the verdict rendered by the jury.

*Motion sustained.    New trial granted.*