**Richard G. TOZIER and Rita D. Tozier**

v.

**Calvin Weymouth TOZIER.**

Supreme Judicial Court of Maine.

Argued May 4, 1981.

Decided Dec. 4, 1981.

Sheila J. Fine (orally), Ogunquit, Kenneth E. Kimmel, Kennebunk, for plaintiffs.

Pine Tree Legal Assistance, Inc., Martha E. Geores (orally), Augusta, for defendant.

Before McKUSICK, C. J., and WER-NICK *, GODFREY, ROBERTS and CARTER, JJ.

ROBERTS, Justice.

The plaintiffs in this action for forcible entry and detainer appeal the judgment of the Superior Court, York County, entered in favor of the defendant following a jury trial. Richard G. and Rita D. Tozier commenced this action, pursuant to 14 M.R.S.A. § 6003, in District Court, Biddeford.[1] The defendant, Calvin Weymouth Tozier, claimed title to the disputed property and the action was ultimately heard in Superior Court.[2] After a jury trial, the Superior Court entered judgment "for the defendant." Subsequently, in an attempt to conform with our decision in *Bicknell Manufacturing Co. v. Bennett*, Me., 417 A.2d 414 (1980) the Superior Court revised the judgment. As revised, the judgment entered in the Superior Court is to the effect that: title to the land in question is in the defendant; no other issue had been raised by either party; and the defendant was entitled to immediate possession of the land in dispute. The Superior Court further ordered that the action be remanded to the District Court for the District Court to make an entry of judgment of possession in favor of the defendant. *See Bicknell*, 417 A.2d at 421. We modify the judgment below, and affirm the judgment as modified.

On appeal, the only issue the plaintiffs have raised is whether the evidence presented at trial was sufficient to sustain the finding by the jury that the defendant was entitled to possession of the disputed land. We must, therefore, determine whether the verdict can be sustained by any reasonable view of the evidence including all justifiable inferences to be drawn therefrom in a light most favorable to the party prevailing below. *Grant v. Warren Brothers Co.*, Me., 405 A.2d 213, 216 (1979).

From the evidence adduced at trial, the jury could have found the following as fact: Ozro and Ida Tozier, the parents of both parties now before us, owned certain parcels of land located in Dayton. They owned the parcel of land currently in dispute, known as the North Field, as tenants in common. In 1953 Ozro told his son Calvin, the defendant, that Calvin could have the North Field to live upon. Calvin then moved from Waterboro where he was then living, and in 1954, with the help of Ozro and Ida, built a dwelling house on the North Field. A year later, Ozro and Ida executed deeds conveying portions of their property, not now in dispute, to their other children, excluding Calvin, but including Calvin's brother Richard, the plaintiff in the case at bar.

In 1960, Ozro died intestate. Following Ozro's death, all the Tozier children including the plaintiff and the defendant conveyed to Ida, Ozro's surviving spouse, "all our right, title, and interest, in any real estate situated in York County, that may have descended to us at law on the death of our late father, Ozro A. Tozier, deceased,

---

* WERNICK, J., sat at oral argument and in the initial conference but retired prior to adoption of this opinion.

1. Since the initiation of this action 14 M.R.S.A. § 6003 has been amended in a manner not here pertinent by P.L. 1981 c. 428, § 5.

2. Initially, the District Court ruled that the claim of title was frivolous and proceeded to enter judgment for the plaintiffs. On appeal to the Superior Court, the original judgment was vacated and the case remanded for removal pursuant to 14 M.R.S.A. § 6006. No issue has been raised before us concerning that previous ruling.

intestate; we, being all the children of the said Ozro A. Tozier and the Grantee herein." Ida conveyed a portion of the property held by her to a third party.

In 1964, Ida conveyed by deed to Richard and his wife, the plaintiffs, the land which is now in dispute. Richard did not record the deed until 1976. A month after the recording of the deed, Richard's attorney sent Calvin a copy of the deed advising Calvin that he was thereby "given permission to keep the house presently occupied by you on the premises owned by Richard D. Tozier until further notice."

On March 2, 1978 the town of Dayton wrote to Richard, the then record owner by virtue of the 1976 recording by him of the deed into him from Ida, and advised him that "your real property . . . formerly occupied by Calvin Tozier has been deemed unfit for any use." The town advised Richard that it intended to commence condemnation proceedings unless "the offending building, trash, debris, and parked automobiles are not removed from said property by May 15, 1978." The jury could have also found that after he built the house on the North Field, Calvin then lived upon the land openly and continuously until this action was commenced.

Following receipt of the letter from the town, Richard commenced this action to oust Calvin from possession. Calvin raised the affirmative defense that he had title to the property as a result of Ozro's parol conveyance to him and his subsequent acts done in reliance upon the conveyance. Alternatively, Calvin asserted title to the disputed land by adverse possession. Following pretrial conference, the Superior Court issued a pretrial order to the effect that "[d]efendant claims title arising from forcible entry and detainer action based on an oral promise with part performance consisting of building a house on the land. Def. claims title house and land it sits on."

Before we reach the merits of the case we find it particularly appropriate to briefly review the function of the Court in an action for forcible entry and detainer. As we noted in *Bicknell,* 417 A.2d 414, the judicial power in an action for forcible entry and detainer is strictly of statutory origin. *Id.* at 418; *see Eveleth v. Gill,* 97 Me. 315, 54 A. 756 (1903). We again emphasize, as we did in *Bicknell,* that an action of "[f]orcible entry and detainer is not a plenary action to quiet title to land but is, rather, a summary proceeding to decide who is entitled to the immediate possession of land"[3] to the exclusion of the other. We are well aware that in many actions for forcible entry and detainer the only issue in dispute may be which party then before the court holds title to the property. *See* 14 M.R.S.A. § 6006. When this issue arises the Superior Court may properly decide the issue of title; however, it must do so with an awareness that the issue of title *only* determines which of the parties then before the court is entitled to immediate possession of the disputed land to the exclusion of the other. *Bicknell,* 417 A.2d at 421, *citing, Throumoulos v. Bernier,* 143 Me. 286, 61 A.2d 681 (1948). Having decided which party has title, the Court must then make an order "stating the substance of its adjudication *as to the entitlement to possession.*" 417 A.2d at 421 (emphasis added).

Although this Court has previously alluded to the ability of a donee to enforce a gift of land accompanied by possession when the donee has been induced by the promise of the gift to make valuable improvements to the land of a permanent nature so as to render a revocation of the gift unjust, inequitable and a fraud upon the donee, we have heretofore never squarely been called upon to decide the issue involving a gift as opposed to a contract. *See LaFlamme v. Hoffman,* 148 Me. 444, 95 A.2d 802 (1953); *Bigelow v. Bigelow,* 95 Me. 17, 49 A. 49 (1901); *Bigelow v. Bigelow,* 93 Me. 439, 45 A. 513 (1900); *Woodbury v. Gardner,* 77 Me. 68 (1885); *Green v. Jones,* 76 Me. 563 (1885). *LaFlamme* and *Bigelow* presented this Court with facts similar to but distinguishable from the case at bar. *Bigelow,* a case

---

**3.** 417 A.2d at 421, *citing, Throumoulos v. Bernier,* 143 Me. 286, 61 A.2d 681 (1948).

twice before this Court,[4] involved an offer by the defendant's uncle to convey to the defendant a farm if the defendant would leave his job and move to the farm. After the defendant moved to the farm his uncle asked him to sign a $1,000 mortgage. When the uncle's assignee sought to foreclose the mortgage, the defendant raised lack of consideration as a defense, claiming that he already had equitable title before the mortgage was executed by virtue of his uncle's promise to convey the property to him. The defendant had brought certain farming implements and "made some rather slight repairs upon the building at a cost . . . of about fifty dollars." 93 Me. at 450, 45 A. at 516.

In *LaFlamme*, 148 Me. 440, 95 A.2d 802, the plaintiff and defendant had entered an agreement whereby the plaintiff granted the defendant the right to maintain a home on a certain parcel of land owned by the plaintiff. The defendant, in reliance upon the agreement, left his previous home and took possession of the land. Both plaintiff and defendant worked together to erect a dwelling upon the land. The defendant supplied only a few hundred dollars of the $6,000 cost of constructing the home.

Both *Bigelow* and *LaFlamme* held that "unless there was a *consideration* for the promise to make the gift, the same was not enforceable . . . ." *Id.* at 449, 95 A.2d at 804 (emphasis in original). The *LaFlamme* court went on to hold that "[a]cts performed in reliance upon a promise cannot constitute a consideration therefor and transform the naked promise into a contract unless the performance of the acts is, in the legal sense, *at the request of the promisor.*" *Id.* at 450, 95 A.2d at 805 (emphasis in original).

Both cases were decided on a *contract* theory and turned upon whether there was

legal consideration to support enforcement of a parol promise. In both *Bigelow* and *LaFlamme* the promisee had made some expenditures on the property. In neither case, however, had the promisee made such valuable improvements that a revocation of a parol *gift* would have operated as a fraud upon the recipient. In fact, the Court in *Bigelow* specifically noted that, although there was evidence to support a finding of legal consideration in contract, that consideration was "not *sufficient* to entitle him to a conveyance if the promise was merely a voluntary one to *make a gift.*" *Bigelow*, 95 Me. at 23, 49 A. at 51 (emphasis added).[5]

When addressing issues which arise concerning the enforcement of a parol promise to convey land, courts must avoid confusing enforcement of a contract as opposed to the enforcement of a gift. The familiar principle that part performance may be sufficient to render a parol contract enforceable in spite of the statute of frauds depends in the first instance, upon proof of consideration to support the parol contract. That consideration must, of course, consist of some detriment to the promisee incurred *at the request* of the promisor. *LaFlamme*, 148 Me. at 450, 95 A.2d at 805. We think, however, that the enforceability of a promise *to make a gift* of land depends not upon contract principles, but upon principles of fraud. A mere showing that a donee incurred *some* detriment at the instance of the donor is insufficient to enforce a parol gift. When the donee, however, has made substantial improvements to the land, and the donee has made the improvements in reliance upon the promise to convey the land, courts will enforce the promise to convey. The circumstances must be such that the refusal to

---

4. 95 Me. 17, 49 A. 49 (1901); 93 Me. 439, 45 A. 513 (1900).

5. In *LaFlamme* we described the second *Bigelow* decision as a rejection of any estoppel basis for enforcement of a parol promise to make a gift of land. That characterization now appears to have been ill-advised. *Compare Bigelow*, 95 Me. at 23, 49 A. at 51, *with La-*

*Flamme*, 148 Me. at 449, 95 A.2d at 804. We think the *Bigelow* Court expressly recognized the distinction between the contract theory and the fraud theory of enforcement of a parol promise in the language we have quoted in our text, *supra* at 7. *But see* Note, *A Survey of Specific Performance in New England*, 35 B.U. L.Rev. 122, 151 (1955).

enforce the promise to make a gift would work a fraud upon the donee.[6]

■ In the case at bar, the jury could have found that Calvin, in reliance upon the gift of land promised to him by his father, went into possession of the land in 1953 and built a house and outbuildings upon it. Here, the donee made valuable and permanent improvements upon the property as opposed to the recipient in *Bigelow* who expended sums in the vicinity of fifty dollars for *repairs* to the property and the recipient in *LaFlamme* who expended six hundred dollars to construct a house which cost several thousand dollars. Moreover, the jury could reasonably find that Calvin's acts of building a house and outbuildings were performed in reliance upon Ozro's parol promise. Calvin believed he owned the land, and that belief was reinforced by Ozro's gifts of land to his other children. To deny the defendant his rights in the property, after over twenty-five years have passed since he entered into possession and made valuable improvements to the land, would be both unjust and inequitable. *See Rarry v. Shimeh*, 360 Pa. 315, 317–18, 62 A.2d 46, 47–48 (1948).

■ We are not here concerned with an action for declaratory judgment, 14 M.R.S.A. §§ 5951–5963; *see Hodgdon v. Campbell*, Me., 411 A.2d 667, 669–70 (1980); a petition to partition, 14 M.R.S.A. § 6501; *see Hoadley v. Wheelwright*, 131 Me. 435, 163 A. 790 (1933), and cases cited therein; nor are we presented with a real action, 14 M.R.S.A. §§ 6701–6704; or an action brought to quiet title to the disputed premises, 14 M.R.S.A. §§ 6651–6658. *See generally* Note, *Maine's Actions to Try Title: A Historical Perspective*, 32 Me.L.Rev. 355 (1980). The reason for our emphasis on the limited function of an action of forcible entry and detainer should be readily apparent. The action of forcible entry and detainer affords a narrow remedy.[7] We do not purport to express an opinion as to the status of the title of the disputed property. We hold only that, insofar as the parties to this suit are concerned, the defendant, if not owner in fee of the property, is at a minimum, a co-tenant with the plaintiff of the land by virtue of Ozro's conveyance to him.[8] The defendant has a right to possession of the property at least equal to that of the plaintiff. As such, the Superior Court was correct to deny the plaintiff a writ of possession. In this proceeding, however, the Superior Court should have refrained from any further action. We conclude that the Superior Court erred to the extent it entered judgment that title to the land in dispute is in the defendant and ordered that the case be remanded to the District Court for a writ of possession to be issued to the defendant.

The entry is:

---

**6.** An excellent discussion of the issues before us may be found in *Pocius v. Fleck*, 13 Ill.2d 420, 429–30, 150 N.E.2d 106, 112 (1958). Although the court in *Pocius* denied the plaintiff relief on the grounds she had failed to sustain her burden of proof, it discussed in detail the contract theory and gift theory of recovery and carefully distinguished the two concepts. *Id.* at 425–26, 150 N.E.2d at 110–13. In discussing the enforcement of a parol *gift* of land the court noted that "[t]he general rule is that a parol gift of land is invalid ... unless after taking possession the donee makes permanent and valuable improvements, or unless such other facts exist as would make it a fraud on the donee not to enforce the gift." *Id.* at 430, 150 N.E.2d at 112. *Accord, Schmitz v. Schulenburg*, 236 Wis. 606, 611–12, 296 N.W. 103, 105 (1941).

**7.** We have previously pointed out to litigants the hazards of an inappropriate choice of remedies. *See Chickering v. Yates*, Me., 420 A.2d 1219 (1980); *Bicknell Mfg. Co. v. Bennett*, Me., 417 A.2d 414 (1980); *Sargent v. Coolidge*, Me., 399 A.2d 1333 (1979). Because forcible entry and detainer provides summary relief, does not permit the filing of a counterclaim, M.D.C. Civ.P. 80D(g) and does not adjudicate title as if under M.R.Civ.P. 80A, *see* Field, McKusick & Wroth, *Maine Civil Practice*, § 180D.3 (Supp. 1981), it often may be appropriate to file a separate action to determine title and seek a stay of the summary proceeding.

**8.** We note that Ozro, at the time of the oral conveyance, was a co-tenant of the land with his wife Ida, who later deeded the land to the plaintiff. Final determination as to the state of the title may well require the consideration of issues not now before us.

Judgment modified to deny plaintiff a writ of possession. Judgment as modified affirmed.

Remanded to the Superior Court with directions to remand to the District Court for entry of judgment denying writ of possession.

All concurring.