INEZ K. ADAMS, ET ALS

*vs.*

ABBIE C. KETCHUM AND ABBIE C. KETCHUM, EXECUTRIX
OF THE LAST WILL AND TESTAMENT OF GEORGE R. KETCHUM.

Aroostook.     Opinion July 11, 1930.

*H. T. Powers*, for plaintiffs.
*Carl A. Weick*,
*Cook, Hutchinson, Pierce & Connell*, for defendant.

SITTING: DUNN, STURGIS, BARNES, FARRINGTON, JJ.
PHILBROOK, A. R. J.

FARRINGTON, J.   This was a bill in equity asking that the defendant be decreed to hold certain real estate and government bonds in trust for the plaintiffs and that she be ordered by the Court to convey the real estate and to transfer and deliver the bonds to the plaintiffs.

The case came to this court on appeal from a decree dismissing the bill.

It will be helpful to review the admitted facts, as they appear in chronological order, covering a long period of time, as well as a concise summary of the testimony of witnesses pertinent to the main issue in the case.

On January 16, 1883, Charles W. Clayton, the father of Inez A. Ketchum, Sarah E. Clayton, his wife, and Charles F. Clayton, a son, and a brother of Inez A. Ketchum, severally named as grantors in the deed and whose source of title does not appear in the printed record of this case, gave a mortgage for $4,000.00, with a one year foreclosure clause, to the Houlton Savings Bank, covering certain real estate located in the Town of Ashland in Aroostook County, and other real estate in the Town of Masardis in the same county.

On February 10, 1890, Charles W. Clayton conveyed to George R. Ketchum, subject to the Houlton Savings Bank mortgage, one undivided half part of certain described land which from the examination of the description contained in the deed apparently embraces the bulk, if not all, of the property mortgaged as above indicated, and referred to it as "property deeded to myself (Charles W. Clayton) by Sarah E. Clayton by her deed dated 29 December 1883." The deed clearly covers the property described in the bill.

A claim of foreclosure by the Houlton Savings Bank was signed by its attorneys, under date of February 15, 1890, five days after the conveyance of the one-half interest by Charles W. Clayton to George R. Ketchum. The method of foreclosure followed was that of publication, the dates being February 26, March 5, and March 12, 1890, duly recorded in the Registry of Deeds on March 15, 1890.

On December 31, 1890, the Houlton Savings Bank mortgage was assigned to Inez A. Ketchum, special mention being made of the rights acquired under "the foreclosure thereof." There was, at the hearing below, no evidence whatever throwing any light on the circumstances surrounding this transaction, and there is none, at this time, except the fact that the assignment was made out and recorded in her name.

On June 20, 1892, the period of redemption having expired, Inez A. Ketchum by deed in which her husband, George R. Ketchum, joined, mortgaged to the Houlton Savings Bank for the sum of $3,000.00, with one year foreclosure clause, the same parcels of land described in the January 16, 1883, deed of mortgage to the Houlton Savings Bank above referred to and assigned to her. The only difference in the description of the property is that the mortgage to the Houlton Savings Bank given in 1883 covered Lot 58 in connection with Lot 59 in Ashland, and had a total acreage of 624 in the lots first enumerated instead of 464 as in the mortgage from Inez A. Ketchum which did not include Lot 58.

On July 5, 1892, Inez A. Ketchum, in a deed in which also her husband joined, gave another mortgage to the Houlton Savings Bank for the sum of $1,300.00, with a one year foreclosure clause, and in this mortgage the description was the same as in the first mortgage given by her.

The notes secured by the two mortgages were signed by George R. Ketchum as well as by the mortgagor.

Inez A. Ketchum died intestate October 3, 1892, leaving her husband, George R. Ketchum, and, as her only heirs at law, four minor children, Rowena Ketchum, Inez K. Adams, Ralph Ketchum, and Charles C. Ketchum. Rowena died unmarried, so that any interest that she might have had in any real estate left by her mother descended one half to her father and the other half to her sister and brothers. There was no administration on the mother's estate, a fact significant of absence of rights and credits belonging to the deceased, at that time at least.

By intention of foreclosure dated August 4, 1894, the Houlton Savings Bank began foreclosure proceedings on the first mortgage. This foreclosure was by three weekly publications under

dates of August 8, August 15, and August 22, 1894, recorded August 23, 1894.

On the second mortgage given by Inez A. Ketchum foreclosure proceedings were begun by publications covering the same dates as on the first mortgage, the record being also August 23, 1894.

Just before the period of redemption was about to expire the Houlton Savings Bank, on the 7th day of August, 1895, assigned the two mortgages to Albert S. Eustis and Frank Aldrich of Cambridge, Massachusetts.

On August 10, 1897, the period of redemption having expired, Albert S. Eustis and Frank Aldrich, for the sum of $2,000.00, sold a portion of the land to George B. Hayward of Ashland, and by an undated deed in which the acknowledgment is December 14, 1898, they sold another parcel to the same person for $2,500.00.

George R. Ketchum, as an insolvent debtor, on June 14, 1898, returning "a full list of all the real and personal estate in the ownership, possession or enjoyment of, or under the control of said debtor, and all such estate to which he was in any way entitled or interested," disclosed no real estate.

On October 24, 1902, Albert S. Eustis and Isabelle A. Edwards, residuary legatee of Frank Aldrich, sold to George R. Ketchum for the sum of $8,000.00 the unsold balance of the property which came to them by virtue of the aforesaid assignments.

On August 7, 1903, George R. Ketchum conveyed to Charles F. Clayton fifty acres, part of Lot No. 36 in Garfield Plantation, which is described in paragraph one of the plaintiffs' bill.

On August 20, 1903, George R. Ketchum conveyed to the said Clayton one-half part in common and undivided of the timber lands situated in Township 11, Range 6, described in paragraph one of the plaintiffs' bill.

On July 20, 1910, Rowena Ketchum, one of the daughters, died unmarried and intestate.

On July 23, 1910, the deed from Albert S. Eustis and Isabelle A. Edwards to George R. Ketchum was duly recorded.

On April 2, 1917, George R. Ketchum conveyed to Linnie C. Mooers parts of Lots numbered 55 and 56 in Ashland and part of

Lot numbered 36 in Garfield Plantation, said lots being described in paragraph one of the bill.

On January 17, 1919, George R. Ketchum and his three children, Ralph Ketchum, Charles C. Ketchum and Inez K. Adams, conveyed to Louis K. Tilley Lot 58, which was not included in the mortgages of Inez A. Ketchum to the Houlton Savings Bank above referred to. The language in the deed at the end of the description is "meaning and intending especially to convey our rights as heirs of Inez A. Ketchum aforesaid, under the said assignment of said mortgage." (Referring to the assignment to their mother by the Houlton Savings Bank on December 31, 1890.)

On July 10, 1920, George R. Ketchum and Charles F. Clayton conveyed to Garfield Lumber Company for $110,818.00 all the timber lands described in paragraph one of the bill.

Sometime after this sale to Garfield Lumber Company in 1920, George R. Ketchum gave to each of the three children living the sum of $3,000.00. The testimony of the daughter, Inez K. Adams, showed that these gifts were made somewhere near Christmas time of the year in which the sale was made.

George R. Ketchum died March 5, 1927, leaving a will, which has been duly probated, under which his widow, Abbie C. Ketchum, took his entire property.

It was admitted as one of the allegations in the bill that prior to George R. Ketchum's decease he had converted into United States Government bonds with a par value of $37,000.00 the funds received from the sale of the timber lands. These bonds remained at his death a part of his estate.

At the hearing Mr. Ludwig, the Assistant Treasurer of the Houlton Savings Bank, and first witness for the plaintiffs, testified in regard to the first loan made by the Bank to Inez A. Ketchum that there was a cancelled check payable to George R. Ketchum, stating that "On June 20 there was a check issued in the amount of $1500. against a loan made at that time of $3000. The balance presumably being paid to him in cash." The books, according to his testimony, showed that the balance was paid to some one in cash but that there was no record to show to whom it was paid.

His statement that the balance was "presumably" paid to

George R. Ketchum is entitled to no weight, it being at best only an expression of opinion.

With reference to the money loaned on the second mortgage, the same witness testified that "There was a second loan in the amount of $1300., two checks on the date of July 5, 1892, and $1000., two $500. checks were paid George R. Ketchum."

The same witness also testified that the records disclosed that on August 7, 1895, the Bank received "in payment of the loans" the sum of $4300. and that the record "simply shows that it was assigned on that date to Eustis & Aldrich." This clearly referred to the two mortgages.

It is in evidence from exhibits that the $1,500.00 check was endorsed by G. R. Ketchum, payable to E. S. Coe or order, who was a lumber owner and an agent for timber land owners, handling lands in the vicinity of Ashland. It was also in evidence that the two $500.00 checks above referred to on the second loan were endorsed by G. R. Ketchum, payable to E. H. Blake or order, and that Mr. Blake owned land in the vicinity of Ashland. It was also in evidence that George R. Ketchum was engaged in "lumber cutting."

This is the sum total of the evidence in the case bearing on the contention that the mortgages securing the two loans were made at the request and for the benefit of George R. Ketchum, the husband of the mortgagor, and that the proceeds of the mortgages were paid to him and expended by him in his business. There is no evidence that the $1,500.00 balance on the first mortgage was received by Mr. Ketchum and no evidence, other than as above indicated, that any of the money for which checks were issued to him was for his own benefit distinct from that of his wife.

The next witness for the plaintiff was a former member of the firm of Eustis, Aldrich & Co., a partnership formed in 1899. Prior to that, from 1884 to the time of the partnership, the witness was in the employ of the firm of Eustis & Aldrich. The witness stated that "approximately in 1895" he heard "a portion at least" of conversation between Mr. Ketchum and the members of the firm of Eustis & Aldrich, but on being asked to relate what he could recall of what was said, he stated, "I can not recall the conversation."

He stated that Mr. Ketchum "borrowed from Eustis & Aldrich

money to take up this mortgage that was running out, given to the Houlton Savings Bank."

This testimony, given more than thirty years after the occurrence of the event about which he testified, can carry little weight after the lapse of so many years, and especially in view of the fact that it is a statement of the witness's own present conclusion, after time had necessarily dimmed his memory, and in this connection, as well as with reference to all of his testimony, it must be borne in mind that he stated that he did not hear any portion of the conversation in regard to the mortgages.

He stated that Eustis & Aldrich at that time took from Mr. Ketchum notes, the amount of which he could not recall, but that those notes were in their possession when the new firm was organized in 1899; that the books of the old firm of Eustis & Aldrich had been destroyed and that only two books remained, which he had in his possession at the time of the hearing, and when he was giving his testimony; that Mr. Ketchum was in the starch business, as was also the firm of Eustis & Aldrich who "furnished the money"; that these matters were carried on the record as "G. R. Ketchum, loans and indebtedness," or as "notes and indebtedness."

He also stated that, according to inventories of the old firm of Eustis & Aldrich made as of June 1 or May 31 of each year, it was shown that in 1893 Ketchum owed the firm of Eustis & Aldrich $240.00; in 1894, $23.33; in 1895, $7,140.00; that no inventory was made in 1896, but that two years were taken in 1897, when it showed that Ketchum was indebted to the firm in the amount of $13,500.00, and in 1898 the amount was $12,000.00, and in 1899, $10,608.82.

The witness testified that the account was "marked settled" but that the record did not show when it was settled; moreover, the record before this court discloses no evidence showing when it was settled.

After stating that Eustis & Aldrich held title to lands in Garfield, the same witness, in answering a question as to whether he knew what was done after the account was settled, stated, "It was deeded back to G. R. Ketchum." This was also a statement of the witness's conclusion after the same long lapse of time, and should

be regarded as no more than an expression of his own opinion that it was "deeded *back*," words which, of themselves, might suggest the inference that the reconveyance was in furtherance of the design, proof of which was fundamentally necessary to the success of the plaintiffs' claim.

After this witness had testified, counsel for parties involved agreed upon the following statement, which was made to the court, and which is a part of the record of the case:

"It is admitted that in the winter of 1898-1899 there was cut on the lands under plaintiff's bill, under permits issued by Eustis and Aldrich, a total of 4,751,801 feet of lumber, the stumpage on which at current rates was approximately $12,000. In the winter of 1899-1900 lumber was cut on the premises described in plaintiff's bill, the stumpage on which at current rates was approximately $3,300. In 1900-1901 about 1,000,000 were cut on the same premises, the stumpage of which at current rates would be approximately $3,000."

On the foregoing facts, together with the bill and the answer, the sitting Justice, after due hearing, signed the following decree, dated March 28, 1930:

"The evidence in this case discloses no dispute concerning such matters of actual fact as are susceptible of direct proof at this time under the rules of evidence. There is a sharp conflict with regard to the inferences which may properly be drawn from the proven facts.

"Without considering the defense of laches, although by no means dismissing it as unworthy of serious attention, I find that the plaintiffs fail, either by evidence or fair inference, to sustain the burden, which would entitle them to the relief they seek. Decree accordingly."

The plaintiffs claimed that from the facts proved and from the fair inferences from those facts a constructive trust, as alleged in their bill, had been established in their favor as the heirs of their deceased mother, Inez A. Ketchum, and that the trust property consisted of seven-eights in common and undivided of the farm unsold and of $37,000.00 United States Government bonds, proceeds of other real estate sold by their father prior to his death.

The defendant, a sister of the deceased Inez A. Ketchum, claimed title to the real estate and bonds under the will of George R. Ketchum, her deceased husband, and contended that from the facts above stated and from the fair inferences from those facts no trust has been established, making the further contention that if the plaintiffs ever had any rights they had lost them by their own laches.

The plaintiffs claimed that after the death of Inez A. Ketchum, George R. Ketchum and their children as above stated became, as husband and heirs at law respectively, co-tenants of the real estate subject to the mortgages, and that as a co-tenant with his children, George R. Ketchum, when he acquired title under the deed from Eustis and Isabelle A. Edwards in 1902, took it in trust for the benefit of all his co-tenants. We express no opinion upon the question as to whether or not a husband, with right by the courtesy under the statute in force in 1892, can be co-tenant with the heirs at law of a deceased wife. If such co-tenancy did as a matter of law exist at the death of Inez A. Ketchum, when the right of redemption under the foreclosure of the Bank mortgage expired, the legal title vested completely and absolutely in Eustis & Aldrich, assignees of the mortgages, so that any co-tenancy which might have existed prior to that time was no longer in existence, having been wiped out by the expiration of the redemption period which deprived them all of any title they may have had.

It is unnecessary to discuss the contention of the plaintiffs that payment by one of two joint debtors, although it be made by him in the form of a purchase and accompanied by an assignment of the debt, may, or may not, still be a discharge of the debt, because, in our opinion, the plaintiffs have failed to sustain the burden resting on them to connect George R. Ketchum with the payment of the mortgage debt by way of the assignment so as to make him in effect the assignee.

The allegation of the bill that Mr. Ketchum, in his dealings with Eustis & Aldrich, was "contriving and intending to take title to the real estate and deprive plaintiffs, who were then minors, of their interest therein" has, in our opinion, not been sustained by the evidence.

In the deed from Eustis and Isabelle A. Edwards to George R. Ketchum in 1902 the consideration named was $8,000.00. The Ketchum mortgages to the Houlton Savings Bank totalled $4,300.00 face value. Assume that on the notes thus secured no interest whatever had been paid by the mortgagor or her husband, a reckoning of interest on the notes from the date they were given up to October 24, 1902, the date of the conveyance to Ketchum, taking into account as partial payments the $4,500.00 received from the two sales of land to George B. Hayward, discloses the significant result that the $8,000.00 paid by George R. Ketchum is double the amount that would have been due, had the situation existed, as claimed by the plaintiffs, that Ketchum had made an arrangement with Eustis & Aldrich to take over the mortgages and hold the property for his benefit. This result, showing a profit as substantial as one hundred per cent, must be placed in the scales as weighing against the plaintiffs' claims.

Suspicion, surmise and supposition can not take the place of evidence and should not be permitted to determine and control the rights of parties, nor do they constitute sufficient grounds upon which plaintiffs in a case of this kind can base the right to a decree in their favor. They must prove their case by the usual rule as to the weight of evidence under the allegations in the bill.

The Court can not disregard its oft repeated holding that the findings of a single Justice in equity upon questions of fact necessarily involved are not to be reversed upon appeal unless they are clearly wrong and that the burden is always on the appellant to satisfy the Court that such is the fact and that otherwise the decree appealed from must be affirmed. *Young* v. *Witham*, 75 Me., 536; *Gardiner Savings Institution* v. *Emerson et al*, 91 Me., 535; *Sposedo* v. *Merriman et als*, 111 Me., at page 538; *Merriman* v. *Jones*, 126 Me., 131.

After a most thorough examination of the bill and answer and taking into consideration all the testimony and the entire record in the case, together with the exhibits and the facts as therein disclosed, and together with the inferences which may be properly drawn from the facts, we are unable to escape the conclusion that the plaintiffs not only have failed to satisfy this Court of error of

the sitting Justice in dismissing the bill but that they failed to establish their case at the hearing before him by that degree of evidence which it was their duty to have produced.

In view of our previously expressed conclusion, it also becomes unnecessary to discuss the question of laches, which it is stoutly contended by the defendant exists in this case, except to say that in our opinion had there been sufficient facts and inference to warrant a contrary finding on the main issue, the facts disclosed give much weight to that contention.

The entry will therefore be,

*Appeal dismissed.*
*Decree below affirmed.*