RAYMOND G. PERRY

*vs.*

H. J. CURTIS, E. B. HOLLOMBY, ROCH TREMBLAY,
ERNEST L. GOODSPEED, ERNEST L. GOODSPEED, JR.

AND

PROVINCIAL TRANSPORT COMPANY

PROVINCIAL TRANSPORT COMPANY

*vs.*

RAYMOND PERRY, ERNEST L. GOODSPEED,
ERNEST L. GOODSPEED, JR., H. J. CURTIS,
E. B. HOLLOMBY, AND ROCH TREMBLAY

Kennebec. Opinion, March 12, 1953.

*Goodspeed & Goodspeed,*
*Arthur F. Tiffin,* for plaintiff.

*MeLean, Southard & Hunt,* for defendant.

SITTING: MURCHIE, C. J., THAXTER, FELLOWS, MERRILL,
NULTY, JJ.

FELLOWS, J. These cross bills in equity were brought in
the Supreme Judicial Court for Kennebec County before a

single justice for determination of the question whether Raymond G. Perry or Provincial Transport Company is the owner of the capital stock of the Maine corporation known as International Coach Lines, Inc. The other parties to the bills, who hold stock, are Ernest L. Goodspeed and Ernest L. Goodspeed, Jr., who hold their stock for Raymond G. Perry; and H. J. Curtis, E. B. Hollomby and Roch Tremblay who hold for Provincial Transport Company.

The court found and decreed in the first bill that Raymond G. Perry was the owner and was entitled to the assignment and return of the capital stock of International Coach Lines, Inc., and that the second bill be dismissed. The bills in equity now come to the Law Court on an appeal filed to the decree in the first case by the defendants Curtis, Hollomby, Tremblay, and Provincial Transport Company, and in the second case on an appeal filed by the Provincial Transport Company.

The real question at issue in each case depends on whether an offer was accepted by Perry, which offer was made by the Provincial Transport Company in January 1949, to purchase the stock of International Coach Lines, Inc., together with a liability to pay counsel who had been acting for International. If the offer by Provincial to Perry was not accepted by Perry, Provincial has no interest in International.

The complete resolution passed by Provincial on January 31, 1949 was as follows:

"RESOLVED,

THAT purchase of International Coach Lines, Inc., be approved at a price of $6,000.00, together with assumption of a contingent liability of $3,000.00 payable to that Company's counsel as, if and when the Montreal-New Brunswick route commenced operations,

> AND THE officers of the Company be, and they are hereby authorized to take all steps necessary to complete this transaction."

The record is an extensive one, and consists of the long direct and cross examinations of Raymond G. Perry of nearly 400 pages, and more than seventy-five exhibits consisting of letters, accounts, corporate records, applications for permits, bonds, certificates, etc. Curtis, Hollomby and Tremblay who were officers or employees of Provincial Transport Company and also directors and stockholders of International Coach Lines, Inc., were not called to testify. The contention of Provincial and its officers now is that the decision of the sitting justice is clearly wrong because "Perry's story is so incredulous, is so inconsistent with itself and with known facts" that "it shows that Perry did accept Provincial's offer of January 31, 1949," and that "his explanation was incorrect or probably incorrect."

Briefly, Perry's testimony is that while he was Traffic Manager of Provincial Transport Company in Montreal, he had the idea of a bus line across the state of Maine from Montreal, Quebec, to St. John, New Brunswick, and after preliminary surveys of highway conditions, population, and competing carriers, he employed attorneys to organize in Maine the International Coach Lines, Inc. He secured permits and franchises from regulatory bodies and executed agreements relative to this proposed bus line. The Provincial made no objection and apparently approved Perry's outside activity, until in 1948 when a new management took over Provincial. The new management was interested in the ownership of the proposed line and it became necessary to commence its operation to avoid loss of franchise.

In January 1949 Provincial made the offer to Perry which Perry testified was never accepted by him. Perry says that Provincial and Perry afterwards agreed to operate the bus line on a temporary basis to ascertain fair value. Provin-

cial put in some initial working capital with buses on lease. In February, Curtis and Tremblay were elected directors of International, and in July 1949 Hollomby became a director and treasurer of International. Perry says it was understood that Provincial was to purchase the capital stock of International when it was ascertained through experience what a fair value was, all to be subject to the approval of any statutory board of regulation. Many of the conversations and agreements testified to by Perry were made with Curtis as general manager of Provincial, and Curtis did not testify to explain or to contradict. The appellants contend that Perry accepted the offer to purchase, but the appellants introduced no testimony, and they say that even without contradictory testimony, certain exhibits should be construed contrary to Perry's explanations.

The explanations of Perry could be believed, however, by the sitting justice in view of the fact that when these many letters and documents were written and prepared, Perry was in the employ of Provincial Transport and hoped to sell at a satisfactory figure, and Perry desired to have bus service over the proposed line of International. Perry evidently felt that he needed the assistance of Provincial and needed the name and influence of Provincial to obtain permits from regulatory boards and commissions, such as the Interstate Commerce Commission, Quebec Transportation Board and the Public Utilities Commission of Maine, in order to start and continue service.

It will serve no useful purpose to consider the many facts and circumstances shown by the testimony of Perry and the exhibits. It is sufficient to say that Perry testified positively that the above offer of Provincial was never accepted by him. There are some statements in some letters and applications to the effect that International was a "subsidiary" of Provincial, or was operated by Provincial, but if the testimony of Perry is believed, the equivocal statements can be

construed as consistent with Perry's explanations. Some of the letters from officers of Provincial can also be considered to recognize the fact that the offer was not accepted. Comprehensive and clearly stated briefs have been filed by the able and learned council on each side, and an examination of each and all briefs in connection with the record shows an abundance of evidence from which, if believed, the presiding justice could make the findings and decrees made. If the presiding justice had not believed Perry's explanations, he could have, and no doubt would have, decided to the contrary.

The presiding justice in finding the principal fact had the right to find facts regarding the surrounding circumstances, and to consider, as he did consider, all the evidence in the case in reaching his conclusions. Circumstances are often vital to indicate the probabilities of truth.

The decision of a single justice upon matters of fact in equity proceedings, will not be reversed in the Law Court unless it is clearly wrong. The appellant has the burden to show the error. "An equity appeal is heard anew on the record, but the findings made by a sitting justice in equity, of facts proved, or that there was a lack of proof, are not to be reversed on appeal unless clearly wrong." *Wolf* v. *W. S. Jordan Co.,* 146 Me. 374, 82 Atl. (2nd) 93; *Levesque* v. *Pelletier,* 144 Me. 245, 68 Atl. (2nd) 9. Unless it appears to be manifestly wrong or is shown by the appellants to be clearly wrong, the decree appealed from must be affirmed. *Adams* v. *Ketchum,* 129 Me. 212, 151 Atl. 146; *Young* v. *Witham,* 75 Me. 536. See also opinion by Justice Merrill in *Sears, Roebuck* v. *Portland,* 144 Me. 250, 258, 68 Atl. (2nd) 12, 16, and opinion by Justice Nulty in *Flagg* v. *Davis,* 147 Me. 71, 75, 83 Atl. (2nd) 319, 320.

Under the well established rules, referred to in the above cases, the question is not that there is possibility of error on

the part of the fact finding justice, nor is it enough that a different view of facts and circumstances might have been taken. It is only when a decision is *clearly wrong* that an appeal will be sustained.

The fact that parties to these bills in equity, who were directly involved in many matters testified to by Raymond Perry, did not take the stand to testify in explanation or contradiction of statements made, was a proper circumstance to be considered by the sitting justice. This unexplained failure to take the witness stand and to testify to facts within their knowledge or to deny facts testified to, is of great significance. As was said by this court in a very recent case: "The unexplained failure of the plaintiff to even offer himself as a witness and to deny the testimony given by the defendant respecting their conversation leads but to one conclusion. That conclusion is, that the defendant's testimony is true." *Scribner* v. *Cyr*, 148 Me. 329, 93 Atl. (2nd) 126.

We have examined the record with care and have considered the contentions of the appellants as expressed in oral argument and in briefs submitted, and we are unable to say that the decisions of the sitting justice in these two cases are in any manner erroneous. We certainly cannot say that they are shown to be "clearly wrong."

*Appeals dismissed.*

*Decrees below affirmed.*