2007 ME 7

**Dennis BRACALE**

v.

**Harold C. GIBBS et al.**

Supreme Judicial Court of Maine.

Submitted On Briefs: Nov. 16, 2006.
Decided: Jan. 9, 2007.

Thomas B. Wheatley, Esq., Fenton, Chapman, Wheatley & Kane, P.A., Bar Harbor, for plaintiff.

Waldemar G. Buschmann, Esq., Weeks & Hutchins, Waterville, for defendants.

Panel: SAUFLEY, C.J., and CLIFFORD, DANA, ALEXANDER, CALKINS, LEVY, and SILVER, JJ.

ALEXANDER, J.

[¶ 1] Dennis Bracale appeals from a summary judgment entered by the Superior Court (Hancock County, *Mead, J.*) in favor of Harold C. and K. Elizabeth Gibbs on Bracale's complaint for specific performance based on promissory estoppel arising from Bracale's purchase of property in Bar Harbor. Bracale asserts that the motion court's application of the doctrine of merger and its interpretation of the real estate contracts do not justify entry of summary judgment. Because Bracale failed to demonstrate that the Gibbses misled him, and because his claims relate to property different from the property for which he might have asserted a claim for specific performance, we affirm the judgment.

## I. CASE HISTORY

[¶ 2] In 1987, the Gibbses and the National Park Service engaged in a real estate exchange by which the Gibbses traded a 7.5–acre parcel and $12,500 to acquire a 13–acre parcel of property from the National Park Service. All property at issue is located in Bar Harbor. The acquisition was consummated by a quitclaim deed to the Gibbses that referenced the Park Service's conveyance of its rights in tract 104–06, supported by a detailed metes and bounds description of the property conveyed. A 1990 survey for the Gibbses outlined the location of this property on the face of the earth, tracking the metes and bounds description in the 1987 deed. Apparently, there remained some uncertainty as to the location of a monument and the boundary at the southwest corner of the 13–acre parcel. In this action, this parcel is called "Parcel One."

[¶ 3] In 1988, the Gibbses began to inquire about ownership of a lot abutting the 885–foot northern boundary of the 13–acre parcel. Ultimately they were advised by their attorney and by officials of the United States of America,[1] that the U.S.A. held no interest in the 2.93–acre lot on their northern boundary. In this action, this lot is called "Parcel Two."

[¶ 4] In 1991, the Gibbses signed a purchase and sale agreement to convey the 13–acre parcel to Bracale and his then wife. The original contract for sale of real estate indicated that the Gibbses were obligated to finalize the property line with Acadia National Park by a set date. However, that original language was struck and the following handwritten language substituted: "Sellers will release any interest they have in property south-west of surveyed property line. Sellers will initiate correspondence with Acadia National Park as to the monument discrepancy affecting the south-west corner of the property."

[¶ 5] Bracale's statement of material facts in opposition to summary judgment indicates that at the closing in early 1992, the Gibbses discussed their inquiries about the 2.93–acre parcel and suggested that Bracale continue efforts to acquire title to the property. The statement of material facts also indicates that there was an "understanding" between Bracale and the Gibbses that the Gibbses "would convey all additional property that was the subject of boundary disputes between [the Gibbses] and the United States of America *at the time of entering into the contract*." (Em-

1. The transactions by the National Park Service in this case were undertaken in the name of the United States of America.

phasis added.) Nothing in Bracale's statement of material facts indicates that, at the time of the closing, the Gibbses believed or stated that the U.S.A. owned the 2.93–acre parcel, or that there was any boundary dispute with the U.S.A. regarding the proper location of their 885–foot northern boundary.

[¶ 6] The Gibbses' 1992 quitclaim deed conveyed to the Bracales "land situate in Bar Harbor, more particularly described as Tract 104–06 as set forth in the deed to these grantors from the United States of America dated January 27, 1987, recorded in Book 1630, page 11, to which deed reference may be had for a more particular description ...." The deed also conveyed "all of grantor's right, title and interest in and to any adjacent property now or formerly of the United States of America located southerly and westerly of the above-described property." This conveyed to the Bracales any rights to property at the southwestern corner or on the southwestern boundary of the 13–acre property that would be subsequently acquired in resolution of the disputed boundary and monument marker with the U.S.A.

[¶ 7] Then followed an extended effort to resolve the boundary and monument location matters with the U.S.A. During these efforts, it was determined that the 1987 conveyance of tract 104–06 to the Gibbses should have included both the 13–acre lot and a separate 2.93–acre lot. The 2.93–acre lot abutted the 885–foot northern boundary of the 13–acre lot as described in the 1987 deed and as appeared in the 1990 survey. In 2001, Bracale's attorney obtained from the U.S.A. a correction deed, revising the 1987 deed to convey to the Gibbses the 13–acre lot, described as "Parcel One," and the separate 2.93–acre lot, described as "Parcel Two." The metes and bounds description of Parcel One in the correction deed is identical to the metes and bounds description for the 13–acre lot

in the 1987 deed. The correction deed stated that the legal description in the 1987 deed "did not include said 2.93–acre parcel of land," and that the U.S.A. had intended to convey Parcel Two to the Gibbses as part of the 1987 transfer of tract 104–06.

[¶ 8] Bracale's attorney sent a copy of the correction deed to the Gibbses, along with a request that they sign over the 2.93–acre parcel to Bracale. The Gibbses refused and obtained a separate correction deed from the U.S.A., dated March 9, 2004.

[¶ 9] In 2004, after the Gibbses refused to transfer Parcel Two to Bracale, he commenced this action for specific performance. His complaint asserted that "[t]his is an action for specific performance pursuant to the general equitable authority of this Court." The complaint indicated that the equitable claim was based on promissory estoppel.

[¶ 10] Bracale contends that the court should order that Parcel Two be conveyed to him by the Gibbses because: (1) the U.S.A. had intended that Parcel Two be part of its conveyance to the Gibbses in 1987; (2) the Gibbses conveyed the interest in the 13–acre property that they believed they then had to the Bracales in 1991; (3) the uncertainty in the boundary descriptions referenced in the 1991 and 1992 purchase and sale documents and in his discussions with the Gibbses included Parcel Two; (4) the southwest boundary referenced in the conveyance documents was the southwest boundary line of Parcel Two; and (5) Bracale had incurred significant legal fees to identify and secure the transfer from the U.S.A. of Parcel Two.

[¶ 11] The Gibbses initially responded to Bracale's action with a motion to dismiss, which was denied. They then filed a motion for summary judgment. That motion was granted. The court concluded, apply-

ing rules of deed construction and contract law, that there was no merger of the deed for the 13–acre parcel with the later deed for the 2.93–acre parcel, and that the purchase and sale agreement and deeds executed in 1991 and 1992 could not be modified by oral contracts due to application of the statute of frauds. Bracale then brought this appeal.

## II. LEGAL ANALYSIS

[¶ 12] We review the grant of a motion for summary judgment construing issues in properly supported statements of material fact most favorably to the non-prevailing party to determine if there are any disputes as to material facts that preclude summary judgment. *Rice v. City of Biddeford,* 2004 ME 128, ¶ 9, 861 A.2d 668, 670. When appropriate, we may affirm a summary judgment on a basis different than determined by the trial court if, on our de novo review, the record establishes that the prevailing party is entitled to summary judgment as a matter of law. *Bakal v. Weare,* 583 A.2d 1028, 1030 (Me. 1990); *see also Bouchard v. Frost,* 2004 ME 9, ¶ 8, 840 A.2d 109, 111.

[¶ 13] Here, there is no real dispute about the key facts. Bracale's complaint seeks specific performance of the 1991 and 1992 contracts and deeds. Those documents conveyed the 13–acre parcel and any rights the Gibbses might have in property abutting the southwest corner or southwest boundary of that 13–acre parcel. There is no ambiguity in the 1991 and 1992 conveyance documents as to what boundary uncertainties are addressed and what future rights regarding the resolution of those disputes may be conveyed. There is no dispute that the monument referenced in the purchase and sale contract is at the "south-west" corner of the property and thus that the referenced line is also the "south-west" line of Parcel One. Parcel Two, north of Parcel One, is not property

"south-west" of Parcel One. Property that could be acquired as a result of resolution of the location of a monument and the southwest boundary of Parcel One has no relation to Parcel Two. The conveyance documents were executed at a point when the Gibbses had no interest, and thus no interest they could convey, in the 2.93–acre parcel. The Gibbses conveyed and the Bracales received, in 1991 and 1992, all they contracted for regarding the 13–acre parcel and any interest that might be acquired, in relation to the southwestern corner of the parcel or the southwestern boundary of the parcel.

[¶ 14] Bracale urges that the doctrine of promissory estoppel should be applied by the court in equity to cover resolution of all disputes with the U.S.A. over conveyance of the larger tract, and that the Gibbses induced Bracale to pursue, at considerable expense, resolution of all boundary disputes with an implicit promise that whatever Bracale recovered would be his. We have adopted the definition of promissory estoppel that appears in the RESTATEMENT (SECOND) OF CONTRACTS § 90 (1981).

> A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. The remedy granted for breach may be limited as justice requires.

*Nappi v. Nappi Distribs.,* 1997 ME 54, ¶ 9, 691 A.2d 1198, 1200 (citation omitted).

[¶ 15] While the discovery that the U.S.A. had intended to convey a second parcel when it conveyed the 13–acre parcel was fortuitous, and occurred primarily as a result of the efforts of Bracale and his attorney, that discovery and pursuit of the transfer of the 2.93–acre parcel was not

procured as a result of any promise, inducement, misrepresentation, or fraud by the Gibbses. The Gibbses were obligated to execute a further conveyance of any additional property acquired as a result of resolution of the southwest boundary or the location of the southwest corner of the 13–acre parcel. Having granted a quitclaim deed to only the 13–acre parcel, they were obligated to do no more.

[¶ 16] When the U.S.A. discovered in 2001 that it had intended to convey Parcel Two to the Gibbses in 1987, it initiated the process to convey Parcel Two. That later conveyance, completed in 2004, created no obligation for the Gibbses to further convey the property to Bracale. In 1991 and 1992, the Gibbses conveyed to Bracale a 13–acre property, not a 16–acre property, and conveyed the rights to only additional property that was "south-west of the surveyed property line." Accordingly, there was no basis for the court to invoke the doctrine of promissory estoppel to require the Gibbses to transfer Parcel Two to Bracale.

The entry is:

Judgment affirmed.