2008 ME 192

**Teresa L. HARVEY et al.**

v.

**Jeffrey B. DOW Sr. et al.**

Supreme Judicial Court of Maine.

Submitted on Briefs: Nov. 4, 2008.

Decided: Dec. 23, 2008.

Paul A. Weeks, Esq., Paul Weeks Attorney, P.A., Bangor, ME, for Teresa L. Harvey.

Edmond J. Bearor, Esq., John K. Hamer, Esq., Rudman & Winchell, L.L.C., Bangor, ME, for Jeffrey B. Dow, Sr. and Kathryn L. Dow.

Panel: SAUFLEY, C.J., and CLIFFORD, ALEXANDER, LEVY, SILVER, MEAD, and GORMAN, JJ.

MEAD, J.

[¶ 1] Teresa L. Harvey appeals from a judgment entered by the Superior Court (Penobscot County, *Hjelm, J.*) in favor of Jeffrey B. Dow Sr. and Kathryn L. Dow on Harvey's complaint seeking to compel the Dows to convey to her the land on which she built a house, or for damages based on the value of the house. Harvey contends that she is entitled to a judgment on theories of promissory estoppel or the existence of a confidential relationship. We note that the findings of the Superior Court do not address the actions of the Dows beyond their generalized statements of intent and the possible application of section 90 of the Restatement of Contracts thereto. We vacate the judgment and remand for further proceedings.[1]

## I. FACTS AND PROCEDURE

[¶ 2] Jeffrey Dow Sr. and Kathryn Dow are the parents of Teresa Harvey.

The Dows own 125 acres of land in Corinth in two adjoining parcels, one fifty acres and the other seventy-five acres. They, their daughter Teresa, and their son Jeffrey Dow Jr. each have homes on the property. From the time they were young, Teresa and her brother talked about the houses they would eventually like to build on the homestead; Teresa said she wanted her home to be located near a spring, close to where it now sits. For their part, the Dows saw the land as their children's heritage that would be left to them or given to them when they were older. Jeffrey Sr. testified that when the children were teenagers, he believed that his wife had promised them some land in the future, and the subject of the children living on the homestead was commonly discussed within the family.

[¶ 3] The Superior Court found that the Dows had a general, non-specific plan to transfer land to the children at some undetermined time. In the court's words, the "evidence at most reveals that Jeffrey Sr. expressed an intention to enter into an agreement to convey property sometime in the future," and "Kathryn had made it clear that eventually, both Teresa and Jeffrey Jr. would end up with all or part of the two parcels."

[¶ 4] In 1999, Teresa and her future husband, Jarrod Harvey, installed a mobile home on her parents' land with their permission at the location where her brother's mobile home is now located. She did not pay rent and did not ask her parents for a deed. Later, she and Jarrod built a garage near the mobile home, again with the Dows' permission.

---

[1] Several counts of the complaint claiming trespass, conversion of personal property, and creating a private nuisance involve Teresa's partner, Craig A. Dyer, as a plaintiff and her brother, Jeffrey B. Dow Jr., as a defendant. Those claims are not at issue in this appeal and are not addressed further. We do not reach Teresa's claim that she had a confidential relationship with the Dows as this matter is remanded on other grounds.

[¶ 5] Around January 2003, Teresa and Jarrod, by then married, decided to build a house on the lot where their mobile home then stood. At the Harveys' request, the Dows agreed to use their home equity line of credit to initially finance the house. At trial, Teresa testified that part of the plan for repaying her parents included having them convey the building site to her by deed once the house was completed. Jeffrey Sr. denied any discussion of a deed at that time. In March 2003, Jarrod Harvey died in a motorcycle accident. Following his death, Teresa decided to finance the house with life insurance proceeds rather than use her parents' home equity line.

[¶ 6] When it came time to do site preparation work for the new house, Teresa, her father, and her grandfather determined that it would cost no more to build further back on the property where Teresa had always wanted her house to be. Jeffrey Sr. agreed that she could build the house at its current site. Before construction began, Teresa and Jeffrey Sr. went to obtain a building permit from the town. There was no discussion of Teresa obtaining a deed at that point; she testified at trial that she did not ask her father for one directly because she did not need it then. The town initially denied Teresa a permit because she would not have the requisite amount of road frontage. A permit was eventually issued to Jeffrey Sr. for him to build another house on his property. Teresa testified that her father told her he would execute a deed to her for the property after the house was built; Jeffrey Sr. said there was no discussion about a deed.

[¶ 7] Construction of the new house began in the summer of 2003 and was completed in May 2004 at a cost to Teresa of about $200,000. Jeffrey Sr. did a substantial amount of the construction himself, including much of the foundation work, and the carpentry, and helped to get un-

derground electrical lines installed. In January 2004, while construction of the house was underway, Teresa lent $25,000 to her brother, Jeffrey Dow Jr. The record indicates that by the spring of 2004, around the time the house was completed, the relationship between Teresa and her parents and brother began to deteriorate over when and how the loan from Teresa to Jeffrey was to be repaid, and over the Dows' dissatisfaction with Teresa's partner, who lived with her. Eventually Teresa sued Jeffrey Jr. for the money, and the Dows filed a grandparents' rights action to see Teresa's children.

[¶ 8] At some point after moving into her new house, Teresa began to ask Jeffrey Sr. for a deed so that she could obtain a mortgage to finance other projects. After a period of discussion, it became clear that the Dows were not going to execute a deed. At the time of trial, Teresa was paying the taxes on the house itself, but she was not paying the property taxes or any rent. Both Kathryn Dow and Jeffrey Jr. testified that they had no knowledge of Jeffrey Sr. ever offering or agreeing to deed any land to Teresa.

[¶ 9] In March 2006, Teresa filed a seven-count complaint in the Superior Court, primarily seeking a judgment compelling the Dows to convey unspecified real property to her, or for damages on her claims of breach of contract, breach of fiduciary duty, and fraud. The Dows counterclaimed, seeking a judgment declaring that Teresa had no rights in their property. Following a two-day bench trial, the court found for the Dows on the real property claims and on their request for a declaratory judgment. Based on her assertion that the court failed to address whether she was entitled to a judgment on a theory of promissory estoppel, Teresa filed motions for further findings, to amend the judgment, and for a new trial. In a writ-

ten decision, the court recognized that Teresa's argument was properly raised and then rejected it, finding that "[the Dows'] statements were not promises that could be enforced even if they were the subject of detrimental reliance," and concluding that "the plaintiffs have not established that Harvey received an offer or promise that can be enforced in this action." This appeal followed.

## II. DISCUSSION

### A. Existence of an Enforceable Promise

 [¶ 10] Teresa contends that the Dows, having made general promises to convey land to her at some point and then assenting to her building a $200,000 house on their property in reliance on those promises, are now estopped from asserting that she has no rights to the land the house is located on. The Superior Court agreed that the Dows made general promises to convey land to Teresa, but concluded that they were too indefinite to enforce because there was no agreement on basic elements such as the boundaries or size of the property involved. We review the court's factual findings for clear error, and its legal conclusion that those facts do not make out a claim of promissory estoppel de novo. *Daigle Commercial Group, Inc. v. St. Laurent*, 1999 ME 107, ¶ 13, 734 A.2d 667, 672.

 [¶ 11] The doctrine of promissory estoppel "applies to promises that are otherwise unenforceable," and is "invoked to enforce [such] promises ... so as to avoid injustice." *Id.* ¶ 14, 734 A.2d at 672 (quotation marks omitted); *Cottle Enters., Inc. v. Town of Farmington*, 1997 ME 78, ¶ 17 n. 6, 693 A.2d 330, 335. It is an accepted doctrine in Maine. *June Roberts Agency, Inc. v. Venture Props., Inc.*, 676 A.2d 46, 49 (Me.1996). We have adopted the definition of promissory estoppel set out in the Restatement (Second) of Contracts, which states:

A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. The remedy granted for breach may be limited as justice requires.

Restatement (Second) of Contracts § 90(1) (1981); *Bracale v. Gibbs*, 2007 ME 7, ¶ 14, 914 A.2d 1112, 1115.

 [¶ 12] Here, the record supports the trial court's finding that although they made general promises to Teresa that she would at some time receive some of their land as a gift or inheritance, the Dows did not make an express promise to convey a parcel of land of any specified size, or with any defined boundaries, at any time certain. The court was correct in finding that the existence of a promise to convey property was an essential element of Teresa's claim, and in holding that if there was no promise on which Teresa could rely, then her claim of promissory estoppel failed. *See Tarbuck v. Jaeckel*, 2000 ME 105, ¶¶ 17, 18, 752 A.2d 176, 181 (stating that "[t]he court's finding that there was no promise on which [the party] could rely thereby foreclosed her argument of promissory estoppel"); *Gagne v. Stevens*, 1997 ME 88, ¶ 13, 696 A.2d 411, 416 (holding that claim of promissory estoppel failed when plaintiff "made no promise specific enough to enforce").

 [¶ 13] If the evidence consisted only of the Dows' general promises to convey land as a gift or inheritance, we would agree that Teresa's claim of promissory estoppel should be denied. However, the evidence included an important second component: the Dows' acquiescence, support, and encouragement of Teresa's con-

struction of a house upon the property and the application of section 90 of the Restatement of Contracts to those facts. Neither the initial decision and judgment nor the order on Teresa's motion for findings of fact addressed these critical points.

[¶ 14] Against the backdrop of the parties' general understanding that Teresa would one day receive property as a gift or inheritance from her parents, she decided to build a new house on their land. Jeffrey Dow Sr. agreed to the location, obtained a building permit to allow construction at that site, and not only acquiesced in the house being built, but built a large portion of it himself. In a promissory estoppel analysis, "[t]he promise relied on by the promisee need not be express but may be implied from a party's conduct." *June Roberts Agency, Inc.,* 676 A.2d at 50; *see Nappi v. Nappi Distribs.,* 1997 ME 54, ¶ 9, 691 A.2d 1198, 1200 (stating that promise may be implied from a party's conduct).

[¶ 15] At least as to the land on which Teresa's house now sits, a promise by Jeffrey Dow Sr. to convey that specific parcel could be implied from his conduct, and if that implication is made, given that Teresa now has an immobile $200,000 asset on that parcel, "[t]he circumstances [are] such that the refusal to enforce the promise to make a gift would work a fraud upon the donee." *Tozier v. Tozier,* 437 A.2d 645, 648–49 (Me.1981); *see Nappi,* 1997 ME 54, ¶ 9, 691 A.2d at 1200 (stating that when applying the doctrine of promissory estoppel "[i]n the context of the transfer of land, when the donee has made substantial improvements to the land in reliance upon the promise to convey the land, courts will enforce the promise to convey." (quotation

marks omitted)). Under these circumstances, a promise is enforceable notwithstanding a lack of consideration. *See Nappi,* 1997 ME 54, ¶ 9, 691 A.2d at 1200.

[¶ 16] In *Tozier,* a father told his son that he could have a parcel of land to live on. 437 A.2d at 646. The son moved from where he had been living and built a house on the parcel with his father's help. *Id.* Years after the father's death, the son's brother made a claim to the property and eventually filed an action for possession. *Id.* at 646–47.

[¶ 17] Analyzing the father's original parol promise to give his son a parcel of land, we said:

> [T]he enforceability of a promise *to make a gift* of land depends not upon contract principles, but upon principles of fraud. A mere showing that a donee incurred *some* detriment at the instance of the donor is insufficient to enforce a parol gift. When the donee, however, has made substantial improvements to the land, and the donee has made the improvements in reliance upon the promise to convey the land, courts will enforce the promise to convey.

*Id.* at 648 (emphasis in original). We then held that building a house constituted a "valuable and permanent improvement[ ]" such that "[t]o deny the [son] his rights in the property ... would be both unjust and inequitable." *Id.* at 649. The same equities are applicable in this case.[2]

[¶ 18] The Restatement (Second) of Contracts also lends support to the inference that the Dows might have made an enforceable promise to convey the site of Teresa's house to her. It defines a "promise" as "a manifestation of intention to act

---

**2.** Because the *Tozier* case involved an appeal from a forcible entry and detainer matter, and the court does not determine title to property in such actions, it cannot be cited as prece-

dent in a matter where title is at issue such as the pending case. It is offered here as a statement of the equitable principles that inform our decision.

or refrain from acting in a specified way, so made as to justify a promisee in understanding that a commitment has been made." Restatement (Second) of Contracts § 2(1) (1981); *see* § 90, reporters' note cmt. a (stating that "[o]n the meaning of 'promise,' see § 2"). Jeffrey Dow Sr.'s actions in approving the site of Teresa's house, obtaining a building permit for it, and then building a substantial part of it himself at that location would seem to be "manifestation[s] of [his] intention to act . . . in a specified way"—namely a manifestation of his intent to confirm his general promise to convey land to Teresa and to direct it to that specific parcel.

[¶ 19] In addition to giving a general definition of the term "promise," section 90 specifically discusses promises to make a gift. It explains that "[s]uch a promise is ordinarily enforced by virtue of the promisee's reliance only if his conduct is foreseeable and reasonable and involves a definite and substantial change of position which would not have occurred if the promise had not been made." Restatement (Second) of Contracts § 90 cmt. f. An illustration to that discussion describes a scenario analogous to the one presented here:

A orally promises to give her son B a tract of land to live on. As A intended, B gives up a homestead elsewhere, takes possession of the land, lives there for a year and makes substantial improvements. A's promise is binding.

Restatement (Second) of Contracts § 90 cmt. f, illus. 16.[3]

■ [¶ 20] In sum, on the facts found by the Superior Court, Teresa's reliance on the Dows' general promise to give her land at some time, when coupled with their affirmative actions in allowing her to build a substantial house on a particular piece of their land, would seem to be eminently foreseeable and reasonable. From those actions, a promise by the Dows to convey that specific site could be fairly implied. Neither the absence of an explicitly articulated promise, nor the absence of consideration is a bar to enforcing that promise. The Superior Court erred in failing to consider the Dows' actions, in conjunction with their generalized statements, in determining whether the existence of a promissory estoppel is established on these facts.[4] Accordingly, we vacate the judgment and remand the matter to the Superior Court for consideration of the issues identified herein.

3. If an enforceable promise is found to exist, the Restatement observes that remedies may include specific performance or compensation for the cost of improvements. Restatement (Second) of Contracts § 90(1), and § 90 cmt. d, illus. 12.

4. The Dows also contend that even if they did make an otherwise enforceable promise to convey land to Teresa, the statute of frauds bars its enforcement because there was no writing memorializing it. In *Gagne v. Stevens,* we recognized that the statute of frauds does not always bar the enforcement of an unwritten promise to convey land:

[S]pecific performance of a contract that does not satisfy the statute of frauds is warranted only "if it is established that the party seeking enforcement, in reasonable reliance on the contract and on the continuing assent of the party against whom enforcement is sought, has so changed his position that injustice can be avoided only by specific enforcement."

1997 ME 88, ¶ 14, 696 A.2d 411, 416 (quoting Restatement (Second) of Contracts § 129 (1981)). This equitable exception to the statute of frauds may apply if one party's reliance has resulted in "an irretrievable change in position." *Id.* It is beyond question that construction of a $200,000 immobile house constitutes an irretrievable change in position; therefore the statute of frauds is not a bar to enforcement of the Dows' promise, if the Superior Court concludes following our remand that such a promise was made.

The entry is:

Judgment as to count one of the complaint and count one of the counterclaim vacated; remanded for further proceedings on those counts. In all other respects, judgment affirmed.