STATE OF MAINE                                      SUPERIOR COURT
                                                      CIVIL ACTION
YORK, ss.                                        DOCKET NO. CV-09-171
                                                 CAB - YOP - 10/18/2010


WELLS FARGO FINANCIAL
LEASING, INC.,

              Plaintiff


        v.                                              **ORDER**


UNITED SYSTEMS ACCESS, INC.,

          Defendant and
       Third-Party Plaintiff

        v.


MICHAEL CARONNEAU,

       Third-Party Defendant


        United Systems Access, Inc., brought this third-party action against defendant

Michael Carbonneau after Wells Fargo Financial Leasing, Inc., brought suit against

United for breach of contract. The court will grant Mr. Carbonneau summary judgment

on all counts.

## BACKGROUND

        This case arises from an equipment lease and business acquisition engineered by

United's Chief Executive Officer, William Fogg, and United employee Michael

Carbonneau. United has a separate action against Mr. Fogg pending in the Business

Court concerning the propriety of Mr. Fogg's actions in light of his fiduciary duties as

CEO. United brought this action against Mr. Carbonneau after being sued by the holder

of an equipment lease Mr. Carbonneau entered into on United's behalf. In its complaint,

United brings four counts against Mr. Carbonneau: intentional misrepresentation; negligent misrepresentation; promissory estoppel; and breach of an employment contract. United's basic theory is that Mr. Fogg and Mr. Carbonneau entered into unwise business deals that went against United's interest without the proper authority, and that they should be responsible for the consequences. Mr. Carbonneau moves for summary judgment on all counts.

United had call centers in Bangor and Kennebunk. (Add'l S.M.F. ¶ 7.) The Bangor office handled all internet service calls for USA Data, a subsidiary of United. (Add'l S.M.F. ¶ 11.) In 2006 the Bangor office began to experience problems with its telephone system. (Supp. S.M.F. ¶ 3.) Priscilla Clark, United's controller who ran the call center in Bangor, contacted Mr. Carbonneau about the problems. (Supp. S.M.F. ¶ 5.) She involved Mr. Carbonneau in part because he had access to United's CEO, Mr. Fogg. (Add'l S.M.F. ¶ 19.)

Ms. Clark then contacted TDS Telecom to inquire about leasing an upgraded phone system, and TDS in turn involved its leasing agent, Tamco Capital Corporation. (Supp. S.M.F. ¶ 6.) Mr. Carbonneau and Ms. Clark began to work with TDS's sales representative regarding United's phone system requirements for Bangor. (Supp. S.M.F. ¶ 7; Opp. S.M.F. ¶ 7; Clark Aff. ¶¶ 12–13.) Mr. Carbonneau also spoke with Mr. Fogg about upgrading United's systems. (Supp. S.M.F. ¶ 8.) A new Nortel phone system was approved for the Bangor office at a cost of approximately $15,000 to $18,000. (Supp. S.M.F. ¶ 9; Opp. S.M.F. ¶ 9; Add'l S.M.F. ¶ 26.)

After the new Bangor system was in place, Mr. Carbonneau spoke with Mr. Fogg about the need to upgrade United's telephone system in Kennebunk so that it could work remotely off of the Bangor system. (Supp. S.M.F. ¶ 10.) Mr. Fogg authorized Mr. Carbonneau to finalize negotiations with TDS regarding a Kennebunk upgrade, execute

the requisite agreements and amendments with Tamco on behalf of United, and oversee the system's installation.[1] (Supp. S.M.F. ¶¶ 11, 13, 14.) After receiving Mr. Fogg's authorization, Mr. Carbonneau finalized negotiations with TDC and executed the Tamco Shield lease agreement on behalf of United with a total cost of $100,000 over the lease period.[2] (Supp. S.M.F. ¶ 12; Add'l S.M.F. ¶ 28.) The lease agreement for the Kennebunk system was not presented to the Board of Directors before execution. (Add'l S.M.F. ¶ 30.)

United argues that the system Mr. Fogg and Mr. Carbonneau procured for the Kennebunk office patently exceeded the office's reasonable business needs and was clearly against United's business interests. (Opp. S.M.F. ¶ 13.) Mr. Carbonneau disagrees, arguing that United needed to increase its capacity to accommodate proposed acquisitions and expansion. (Reply to Add'l S.M.F. ¶¶ 7, 29, 36, 53, 56.) While Mr. Fogg was CEO, he purchased assets that later became a new company, TeleBlend, with the knowledge and consent of United's Board. (Add'l S.M.F. ¶ 41; Reply to Add'l S.M.F. ¶ 41.) The Board expected that TeleBlend would be turned over to United, but there was no formal agreement to do so. (Add'l S.M.F. ¶ 42; Reply to Add'l S.M.F. ¶ 42.) Shortly after the Kennebunk upgrade, United employees in that office began to handle TeleBlend calls. (Add'l S.M.F. ¶ 46.) Mr. Fogg and Mr. Carbonneau both ultimately left

---

[1] United objects by arguing that the "surrounding circumstances make clear that [Mr.] Fogg did not have the authority to authorize [Mr.] Carbonneau to finalize negotiations regarding the new Kennebunk phone system." (Opp. S.M.F. ¶ 11; see Opp. S.M.F. ¶¶ 12–14.) This appears to be a legal conclusion regarding the legitimacy of Mr. Fogg's attempt to delegate authority rather than evidence controverting the fact that he did tell Mr. Carbonneau to engage in the transactions at issue.

[2] The parties also dispute Mr. Carbonneau's title within United's organization. United's bylaws give the Board of Directors the sole authority appoint officers, and the Board never appointed Mr. Carbonneau to the position of Vice President. (Add'l S.M.F. ¶ 22.) However, Mr. Carbonneau used the title of Vice President when dealing with target companies and vendors on United's behalf, allegedly with the Chairman of the Board's knowledge. (Reply to Add'l S.M.F. ¶ 22.) Given that United's CEO expressly authorized Mr. Carbonneau to take the actions giving rise to this suit, the issue of Mr. Carbonneau's title appears to be immaterial.

United in March 2008. (Add'l S.M.F. ¶¶ 4–5.) Ownership of TeleBlend is one issue in United's separate action against Mr. Fogg. (Add'l S.M.F. ¶ 49.)

On June 12, 2009, Wells Fargo Financial Leasing, Inc., filed an action as assignee of the Tamco Shield lease against United for breach of contract. United filed this third-party action against Mr. Carbonneau shortly thereafter, and Mr. Carbonneau responded with a two-count counterclaim. The court granted Wells Fargo summary judgment against United on April 27, 2010. Mr. Carbonneau then filed this motion for summary judgment on United's third-party claims on June 24, 2010.

## DISCUSSION

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. M.R. Civ. P. 56(c); *see also Levine v. R.B.K. Caly Corp.*, 2001 ME 77, ¶ 4, 770 A.2d 653, 655. An issue of "fact exists when there is sufficient evidence to require a fact-finder to choose between competing versions of the truth at trial." *Inkell v. Livingston*, 2005 ME 42, ¶ 4, 869 A.2d 745, 747 (quoting *Lever v. Acadia Hosp. Corp.*, 2004 ME 35, ¶ 2, 845 A.2d 1178, 1179). Any ambiguities "must be resolved in favor of the non-moving party." *Beaulieu v. The Aube Corp.*, 2002 ME 79, ¶ 2, 796 A.2d 683, 685 (citing *Green v. Cessna Aircraft Co.*, 673 A.2d 216, 218 (Me. 1996)).

United first accuses Mr. Carbonneau of intentionally misrepresenting "himself as an authorized representative and agent of United to Tamco." (United's Compl. ¶ 18.) To succeed on its claim of intentional or fraudulent misrepresentation, United must prove by clear and convincing evidence:

> (1) that [Mr. Carbonneau] made a false representation (2) of a material fact (3) with knowledge of its falsity or in reckless disregard of whether it is true or false (4) for the purpose of inducing [United] to act in reliance upon it, and (5) [United] justifiably relied upon the representation as true and acted upon it to [its] damage.

4

*Maine Eye Care Assocs. P.A. v. Gorman*, 2006 ME 15, ¶ 19, 890 A.2d 707, 711 (quoting *Mariello v. Giguere*, 667 A.2d 588, 590 (Me. 1995)); *see* Simmons, Zillman & Gregory, *Maine Tort Law* § 11.02–11.03 at 307–09 (1999 ed.) (identifying intentional and fraudulent misrepresentation as the same action). The record strongly indicates that Mr. Carbonneau did in fact have authority to act as United's agent as delegated by the company's CEO, Mr. Fogg. However, assuming for the moment that Mr. Carbonneau's authority and knowledge remain in dispute, United has only alleged that Mr. Carbonneau made a false statement to Tamco. Nothing in the record indicates that Mr. Carbonneau made a false statement to *United*, upon which *United* relied to its detriment. From both the record and the pleadings, the only entity that relied on Mr. Carbonneau's representations was Tamco. It follows that only Tamco has a potential claim against him for intentional misrepresentation.

United's claim of negligent misrepresentation fails for the same reason. An action for negligent misrepresentation will lie where:

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

*Chapman v. Rideout*, 568 A.2d 829, 830 (Me. 1990) (quoting Restatement (Second) of Torts § 552(1) (1977)). United has not shown or alleged that Mr. Carbonneau supplied it with false information. It bases its claim on false information allegedly supplied to Tamco, on which Tamco relied. United has failed to show that it relied on any statement by Mr. Carbonneau, and without reliance it has no viable claim.

United's third count alleges promissory estoppel. "The doctrine of promissory estoppel 'applies to promises that are otherwise unenforceable,'" when necessary to

avoid injustice. *Harvey v. Dow*, 2008 ME 192, ¶ 11, 962 A.2d 322, 325 (quoting *Daigle Commercial Group, Inc. v. St. Laurent*, 1999 ME 107, ¶ 14, 734 A.2d 667, 672). A promise will be enforced where the promisor should reasonably expect it "to induce action or forbearance on the part of the promisee or a third person" and the promise does induce such action or forbearance, "if injustice can be avoided only by enforcement of the promise." *Id.* (quoting Restatement (Second) of Contracts §90(1) (1981)). United bases its claim on the promise that Mr. Carbonneau made that he would act in United's best interest by accepting employment, and United relied on that promise by employing him. (United's Compl. ¶¶ 27–29.) From this, United contends that Mr. Carbonneau should be required to make United whole for its losses resulting from his alleged failure to act in United's interests. (United's Compl. ¶ 30.)

This is simply not a circumstance to which the doctrine of promissory estoppel applies. The doctrine is an equitable form of a contract action that makes an otherwise gratuitous promise binding on its maker. *See* Restat 2d of Contracts, § 90 cmt. a (1981). It generally applies in circumstances where the promisor's action directly causes the promisee or a third-party beneficiary to act in detrimental reliance. United has not provided any evidence of the alleged promise or shown that it materially changed its position in reliance thereon. There is no promise to enforce. United appears to be using the doctrine of promissory estoppel as a clumsy vehicle to bring a claim for breach of duty.

Finally, United accuses Mr. Carbonneau of breaching his employment contract by executing the lease with Tamco. (United's Compl. ¶ 33.) United has not presented any evidence of the alleged employment contract, making it appropriate to grant summary judgment in Mr. Carbonneau's favor.

6

# CONCLUSION

The court Grants Mr. Carbonneau's motion for summary judgment on all counts of United's complaint.

Dated: October 18, 2010

G. Arthur Brennan
Justice, Superior Court

ATTORNEYS FOR PLAINTIFF:
RANDY J CRESWELL, ESQ.
STEPHANIE WILLIAMS, ESQ.
PERKINS THOMPSON
PO BOX 426
PORTLAND ME   04112

ATTORNEY FOR DEFENDANT:
KEVIN G GRIMES, ESQ.
LAW OFFICE OF KEVIN G GRIMES
82 PORTLAND ROAD
KENNEBUNK ME   04043

ATTORNEYS FOR 3RD P DEFENDANT:
MICHAEL MESSERSCHMIDT, ESQ.
JOSHUA R CARVER, ESQ.
PRETI FLAHERTY BELIVEAU PACHIOS & HALEY
PO BOX 9546
PORTLAND ME   04112-9546