2011 ME 4

**Teresa L. HARVEY**

v.

**Jeffrey B. DOW Sr. et al.**

Supreme Judicial Court of Maine.

Argued: Oct. 6, 2010.
Decided: Jan. 6, 2011.

Paul A. Weeks, Esq. (orally), Paul Weeks Attorney PA, Bangor, ME, for Teresa L. Harvey.

Edmond J. Bearor, Esq. (orally), John K. Hamer, Esq., Rudman & Winchell, LLC, Bangor, ME, for Jeffrey B. Dow, Sr., and Kathryn L. Dow.

Panel: SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, GORMAN, and JABAR, JJ.

JABAR, J.

[¶ 1]  Teresa L. Harvey appeals from a judgment of the Superior Court (Penobscot County, *Hjelm, J.*), entered after our

decision in *Harvey v. Dow* (*Harvey I*), 2008 ME 192, 962 A.2d 322, in which we vacated the court's original judgment and remanded for further proceedings. As she did in *Harvey I*, Teresa assigns error to the court's ruling on the promissory estoppel count of her complaint against Jeffrey B. Dow Sr. and Kathryn L. Dow. We again vacate the judgment and remand to the Superior Court for entry of a judgment in favor of Teresa and for further proceedings to determine an appropriate remedy.

## I. BACKGROUND

[¶ 2] The outcome of this appeal is largely a product of our previous decision in this case. Thus, of necessity, we retrace our steps. In *Harvey I*, we set forth the relevant factual and procedural history, as it existed to that point, as follows:

Jeffrey Dow Sr. and Kathryn Dow are the parents of Teresa Harvey. The Dows own 125 acres of land in Corinth in two adjoining parcels, one fifty acres and the other seventy-five acres. They, their daughter Teresa, and their son Jeffrey Dow Jr. each have homes on the property. From the time they were young, Teresa and her brother talked about the houses they would eventually like to build on the homestead; Teresa said she wanted her home to be located near a spring, close to where it now sits. For their part, the Dows saw the land as their children's heritage that would be left to them or given to them when they were older. Jeffrey Sr. testified that when the children were teenagers, he believed that his wife had promised them some land in the future, and the subject of the children living on the homestead was commonly discussed within the family.

The Superior Court found that the Dows had a general, non-specific plan to transfer land to the children at some undetermined time. In the court's words, the "evidence at most reveals that Jeffrey Sr. expressed an intention to enter into an agreement to convey property sometime in the future," and "Kathryn had made it clear that eventually, both Teresa and Jeffrey Jr. would end up with all or part of the two parcels."

In 1999, Teresa and her future husband, Jarrod Harvey, installed a mobile home on her parents' land with their permission at the location where her brother's mobile home is now located. She did not pay rent and did not ask her parents for a deed. Later, she and Jarrod built a garage near the mobile home, again with the Dows' permission.

Around January 2003, Teresa and Jarrod, by then married, decided to build a house on the lot where their mobile home then stood. At the Harveys' request, the Dows agreed to use their home equity line of credit to initially finance the house. At trial, Teresa testified that part of the plan for repaying her parents included having them convey the building site to her by deed once the house was completed. Jeffrey Sr. denied any discussion of a deed at that time. In March 2003, Jarrod Harvey died in a motorcycle accident. Following his death, Teresa decided to finance the house with life insurance proceeds rather than use her parents' home equity line.

When it came time to do site preparation work for the new house, Teresa, her father, and her grandfather determined that it would cost no more to build further back on the property where Teresa had always wanted her house to be. Jeffrey Sr. agreed that she could build the house at its current site. Before construction began, Teresa and Jeffrey Sr. went to obtain a building permit

from the town. There was no discussion of Teresa obtaining a deed at that point; she testified at trial that she did not ask her father for one directly because she did not need it then.... A permit was eventually issued to Jeffrey Sr. for him to build another house on his property. Teresa testified that her father told her he would execute a deed to her for the property after the house was built; Jeffrey Sr. said there was no discussion about a deed.

Construction of the new house began in the summer of 2003 and was completed in May 2004 at a cost to Teresa of about $200,000. Jeffrey Sr. did a substantial amount of the construction himself, including much of the foundation work, and the carpentry, and helped to get underground electrical lines installed....

At some point after moving into her new house, Teresa began to ask Jeffrey Sr. for a deed so that she could obtain a mortgage to finance other projects. After a period of discussion, it became clear that the Dows were not going to execute a deed. At the time of trial, Teresa was paying the taxes on the house itself, but she was not paying the property taxes or any rent. Both Kathryn Dow and Jeffrey Jr. testified that they had no knowledge of Jeffrey Sr. ever offering or agreeing to deed any land to Teresa.

In March 2006, Teresa filed a seven-count complaint in the Superior Court, primarily seeking a judgment compelling the Dows to convey unspecified real property to her, or for damages on her claims of breach of contract, breach of fiduciary duty, and fraud. The Dows counterclaimed, seeking a judgment declaring that Teresa had no rights in their property. Following a two-day bench trial, the court found for the Dows on the real property claims and on their request for a declaratory judgment. Based on her assertion that the court failed to address whether she was entitled to a judgment on a theory of promissory estoppel, Teresa filed motions for further findings, to amend the judgment, and for a new trial. In a written decision, the court recognized that Teresa's argument was properly raised and then rejected it, finding that "[the Dows'] statements were not promises that could be enforced even if they were the subject of detrimental reliance," and concluding that "the plaintiffs have not established that Harvey received an offer or promise that can be enforced in this action."

2008 ME 192, ¶¶ 2–9, 962 A.2d at 323–25.

[¶ 3] On appeal in *Harvey I*, we addressed Teresa's contention that the court erred in analyzing her claim of promissory estoppel. *Id.* ¶ 10, 962 A.2d at 325. In doing so, we recognized that ample record evidence supported the court's finding that the Dows had not made "an express promise to convey a parcel of land of any specified size, or with any defined boundaries, at any time certain." *Id.* ¶ 12, 962 A.2d at 325. We explained, however, that the evidence also included a vital second component: "the Dows' acquiescence, support, and encouragement of Teresa's construction of a house upon the property and the application of section 90 of the Restatement of Contracts to those facts." *Id.* ¶ 13, 962 A.2d at 325–26. Neither the original judgment nor the order on Teresa's M.R. Civ. P. 52 motion had addressed those important points. *Id.* ¶ 13, 962 A.2d at 326.

[¶ 4] After discussing the significance of this evidence in the context of promissory estoppel, we summarized our opinion thusly:

[O]n the facts found by the Superior Court, Teresa's reliance on the Dows' general promise to give her land at some time, when coupled with their affirmative actions in allowing her to build a substantial house on a particular piece of their land, would seem to be eminently foreseeable and reasonable. From those actions, a promise by the Dows to convey that specific site could be fairly implied. Neither the absence of an explicitly articulated promise, nor the absence of consideration is a bar to enforcing that promise. The Superior Court erred in failing to consider the Dows' actions, in conjunction with their generalized statements, in determining whether the existence of a promissory estoppel is established on these facts.

*Id.* ¶ 20, 962 A.2d at 327. We therefore vacated the judgment and remanded the matter to the court "for consideration of the issues identified herein."[1] *Id.*

[¶ 5] Following our remand, the court again found against Teresa on the issue of promissory estoppel. Basing its decision on the existing record, the court reasoned that the Dows' conduct failed to create an enforceable promise because it remained unclear (1) when they intended to convey the land, and (2) how much land they intended to convey, beyond the particular parcel on which the house now sits. The court further concluded that any "assumptions that [Teresa] made about those expectations of location and time" were not reasonable. Although it acknowledged that the Dows were "subject to a limited enforceable obligation to perform sometime in the future," the court found that relief for Teresa was unavailable because the "issue presented here is whether the

[Dows] are subject to a *present* legal obligation to convey land."

[¶ 6] After entry of the judgment, Teresa filed a motion for findings of fact and conclusions of law. *See* M.R. Civ. P. 52. The court denied the motion, clarifying that "the date when [Teresa] will be entitled to acquire a parcel of property is undetermined, except that the conveyance would have to occur no later than the distribution of the assets of the estate of Jeffrey Dow, Sr. or Katherine Dow, whoever survives longer." Teresa then filed this appeal.

## II. DISCUSSION

### A. Promissory Estoppel

[¶ 7] In this appeal, Teresa argues that the court erred in applying the principles of promissory estoppel we set forth in *Harvey I.* "We review the court's factual findings for clear error, and its legal conclusion that those facts do not make out a claim of promissory estoppel de novo." *Harvey I,* 2008 ME 192, ¶ 10, 962 A.2d at 325. On remand, the court made no new factual findings; instead, based on the facts reported in *Harvey I,* it concluded that the Dows' actions and general statements, taken together, did not amount to a sufficiently specific and unambiguous promise capable of current enforcement through promissory estoppel. We review this legal conclusion de novo. *See id.; Daigle Commercial Grp., Inc. v. St. Laurent,* 1999 ME 107, ¶ 13, 734 A.2d 667, 672.

[¶ 8] Before explaining why we find error in the court's conclusion, an important procedural issue warrants attention. Whereas in *Harvey I* we remanded the matter for further proceedings, today

---

1. We affirmed the court's judgment in all other respects. *Harvey v. Dow (Harvey I),*

2008 ME 192, ¶ 20, 962 A.2d 322, 328.

we instruct the court to enter a judgment in favor of Teresa. These differing mandates can be understood in light of our limited appellate role. It is not our place, as an appellate court, to make findings of fact. *See Smith v. Hawthorne*, 2002 ME 149, ¶ 15, 804 A.2d 1133, 1138 (recognizing "the trial court's particular expertise in fact finding and its proper institutional role" (quotation marks omitted)). Because, in *Harvey I*, we identified error in the court's apparent failure to consider the relevance of the Dows' actions in evaluating Teresa's claim of promissory estoppel, we thought it prudent to allow the court an opportunity to make new or additional factual findings. *Cf. Pullman–Standard v. Swint*, 456 U.S. 273, 292, 102 S.Ct. 1781, 72 L.Ed.2d 66 (1982) ("[W]here findings are infirm because of an erroneous view of the law, a remand is the proper course unless the record permits only one resolution of the factual issue."). Notwithstanding obvious interests in promoting judicial economy and minimizing litigation expenses, we sought to avoid intruding on the trial court's role as fact-finder. For this reason, our opinion in *Harvey I* was couched in language intended to reflect the possibility of further factual development on remand.[2]

[¶ 9] Given our explanation of the applicable promissory estoppel principles in *Harvey I*, we are now assured that the court found all of the facts relevant to a proper analysis. Nonetheless, we disagree with the court's legal conclusion. In its judgment on remand, the court concluded that any implied promise by the Dows was too indefinite to be enforceable, particularly with respect to the time when Teresa would be entitled to receive the property. In our view, however, the Dows' acquies-

cence, support, and encouragement of Teresa's construction of a house on a parcel of their land conclusively demonstrate their intention to make a present conveyance of that property. After making general promises to convey land to Teresa, Jeffrey Dow Sr. "approv[ed] the site of Teresa's house, obtain[ed] a building permit for it, and then buil[t] a substantial part of it himself." *Harvey I*, 2008 ME 192, ¶ 18, 962 A.2d at 327. As one leading authority has observed, statements or conduct representing a

> present commitment to do or refrain from doing something in the future reasonably can be expected to induce reliance and the promisee's reliance on such statements is reasonable. In that case, there is a promissory commitment or assurance which can be enforced.

3 Eric Mills Holmes, *Corbin on Contracts* § 8.9, at 29 (1996). Here, by actively supporting Teresa's construction of the house, the Dows demonstrated a "present commitment to do or refrain from doing something in the future"—namely, to convey the property to Teresa or forgo any challenge to Teresa's ownership or use of it. *Id.*

[¶ 10] Consistent with our decision in *Harvey I*, we hold that the court erred in concluding, based on its factual findings, that Teresa was not entitled to a judgment on her promissory estoppel claim. Accordingly, we vacate the judgment and remand for entry of a judgment in favor of Teresa.

## B. Remedy

■ [¶ 11] Although we direct the court to enter a judgment in favor of Teresa, we cannot, at this juncture, opine on an

---

**2.** *See, e.g., Harvey I*, 2008 ME 192, ¶ 20, 962 A.2d at 327 (stating that Teresa's reliance "*would seem to be* eminently foreseeable and reasonable," and that a promise by the Dows "*could be* fairly implied" (emphasis added)).

appropriate remedy. Because "[t]he assessment of damages is within the sole province of the factfinder," *Down E. Energy Corp. v. RMR, Inc.*, 1997 ME 148, ¶ 7, 697 A.2d 417, 420, we must remand to the Superior Court to take up the issue. Nevertheless, mindful of the unique procedural circumstances, we offer the following guidance.

 [¶ 12] " 'A promise binding under [promissory estoppel] is a contract, and full-scale enforcement by normal remedies is often appropriate.' " *Daigle Commercial Grp., Inc.*, 1999 ME 107, ¶ 23, 734 A.2d at 674–75 (quoting Restatement (Second) of Contracts § 90 cmt. d (1981)). In her complaint, Teresa sought specific performance to compel the Dows to convey to her the land on which she built the house, or for damages based on the value of the house. Addressing the relief available on a claim of promissory estoppel, the Restatement provides:

> [T]he same factors which bear on whether any relief should be granted also bear on the character and the extent of the remedy. In particular, relief may sometimes be limited to restitution or to damages or specific relief measured by the extent of the promisee's reliance rather than by the terms of the promise. Unless there is unjust enrichment of the promisor, damages should not put the promisee in a better position than performance of the promise would have put him. In the case of a promise to make a gift it would rarely be proper to award consequential damages which would place a greater burden on the promisor than performance would have imposed.

Restatement (Second) of Contracts § 90 cmt. d (citations omitted). In fashioning a remedy, the court may look to this provision for direction. *See Stone v. Waldoboro Bank*, 559 A.2d 781, 782 (Me.1989) ("We have previously approved the doctrine of promissory estoppel as set forth in section 90 of the *Restatement (Second) of Contracts*.").

The entry is:

Judgment as to count one of the complaint and count one of the counterclaim vacated. Remanded for entry of a judgment in favor of Teresa on those counts and for further proceedings to determine a remedy.