STATE OF MAINE                                    SUPERIOR COURT
CUMBERLAND, ss.                                   CIVIL ACTION
                                                  DOCKET NO: AP-11-006
                                                  RAC-CUM- 4/29/2011


LINDA KARNES,

              Plaintiff,

       v.                                              ORDER

                         STATE OF MAINE
MAREK KWASNIK,          Cumberland, ss. Clerk's Office

                            APR 28 2011
              Defendant
                         RECEIVED


       Plaintiff-Appellee Linda Karnes initiated this forcible entry and detainer

action against Marek Kwasnik on December 9, 2010. The District Court entered

judgment for Ms. Karnes on January 26, 2011, following hearing. Mr. Kwasnik

now appeals the judgment of the District Court and requests both a stay of

execution and a jury trial de novo.

       Actions for forcible entry and detainer are governed by Title 14, chapter

709 of the Maine Revised Statutes and Maine Rule of Civil Procedure 80D. A

party appealing from the judgment of the District Court may request "jury trial

de novo on any issue so triable of right" in the Superior Court. M.R. Civ. P.

80D(f)(2)(A) (2010). The party must file an affidavit "setting forth specific facts

showing that there is a genuine issue of material fact as to which there is a right

to trial by jury." Id.

       Mr. Kwasnik requests a jury trial on the "issues of promissory estoppel,

estoppel by misrepresentation, estoppel by representation, equitable estoppel,"

and whether Mr. Kwasnik holds the subject property as a tenant-in-common

1

with Ms. Karnes. These are all questions of law, not fact. The court has nonetheless reviewed "all the affidavits and the whole record" and determined that there are no genuine issues of fact material to the legal issues. M.R. Civ. P. 80D(f)(5) (2010). Mr. Kwasnik's request for a jury trial is denied, and the court will review the judgment of the District Court for legal error. *Id.*

Testimony at the hearing in District Court was consistent. Ms. Karnes and Mr. Kwasnik began a romantic relationship in or around January 2004. (Tr. at 7, 39.) At that time they moved in together and lived in an apartment at 99 Swett Road. (Tr. at 8, 35.) The two shared responsibility for their bills and living expenses while at the Swett Road apartment. (Tr. at 8, 35.)

In late 2005 or early 2006, Mr. Kwasnik and Ms. Karnes decided to buy a home. (Tr. at 8, 35–36, 40, 42.) Mr. Kwasnik was not employed or otherwise earning money at the time. (Tr. at 19, 35–36, 41.) Ms. Karnes purchased the property at 88 Peaked Mountain Rd., the subject of this action, in February 2006. (Tr. at 8, 32.) While Mr. Kwasnik was involved in the purchase and assisted with logistics, he did not financially contribute to the transaction. (Tr. at 36, 40–41.)

Ms. Karnes is the only person named in the deed and the mortgage,[1] and she paid all of the real estate taxes. (Tr. at 11, 13, 18, 36, 41.) Mr. Kwasnik knew that the deed was in Ms. Karnes's name, and did not want his own name to appear for unspecified reasons. (Tr. at 41.) Mr. Kwasnik agreed at the hearing that he has no claim to the property through any written deed. (Tr. at 18.)

In April 2006, Ms. Karnes executed a will leaving her property to Mr. Kwasnik. (Tr. at 29–30.) Mr. Kwasnik never resumed employment or otherwise earned any income other than small cash received in exchange for odd jobs done

---

[1] There was no down payment. (Tr. at 43.)

2

for friends. (Tr. at 19–20, 36–37.) He did perform some improvements to the property during this time. (Tr. at 30, 42.) After moving into the residence at 88 Peaked Mountain Rd., Ms. Kwasnik did not contribute any money towards the mortgage, property taxes, utilities, groceries, gas, or building supplies.[2] (Tr. at 20, 32, 37.) If Mr. Kwasnik did contribute financially, the amount was admittedly immaterial. (Tr. at 37.)

Ms. Karnes son passed away in 2007. (Tr. at 21.) Ms. Karnes asked Mr. Kwasnik to go back to work in late 2009 or early 2010, but he refused. (Tr. at 20.) Ms. Karnes also asked Mr. Kwasnik to leave the property, and again he refused. (Tr. at 20.) She then initiated eviction proceedings against Mr. Kwasnik. While there is some dispute about how notice was accomplished, Mr. Kwasnik did receive notice of eviction by November 4, 2010. (Hearing Ex. 5.) Mr. Kwasnik refused to leave, and Ms. Karnes removed herself from her home in the last week of November 2010. (Tr. at 26.) Ms. Karnes timely filed this action for forced entry and detainer on December 9, 2010. Ms. Karnes and Mr. Kwasnik are both adults, they have never been married to each other, and they have no children. (Tr. at 46–47, 51.)

A hearing was held in District Court on January 26, 2011. Mr. Kwasnik argued that the court did not have jurisdiction to hear the case because it was a domestic-relations suit, and that he owns a fifty-percent interest in the subject property through estoppel. (Tr. at 4–5, 52–53.) When the court specifically asked Mr. Kwasnik if he was raising a defense based on service of notice to quit the premises as prescribed by Title 14 section 6002, Mr. Kwasnik responded: "No. I

---

[2] Ms. Karnes testified that the parties mutually understood that they would continue to share their expenses equally after acquiring a house. (Tr. at 19.) Mr. Kwasnik denies that any such agreement existed. (Tr. at 32.) This dispute of fact is genuine, but immaterial.

am only raising my . . . previous issues—promissory estoppel and jurisdiction . . . ." (Tr. at 25–26.)

After hearing the testimony, the presiding judge found that Ms. Karnes was the owner of the premises at 88 Peaked Mountain Rd. and Mr. Kwasnik was subject to eviction. The parties were not married and had no children. Ms. Karnes had not made any promises or misrepresentations to Mr. Kwasnik to induce him to act to his detriment. Rather, she had purchased the property in her own name in 2006 with his knowledge and consent. No co-tenancy had ever been created, Mr. Kwasnik was at most a tenant-at-will, and his tenancy had been properly terminated.

On appeal, Mr. Kwasnik claims the District Court erred in finding that it had jurisdiction to hear this matter, and erred in finding that he has no legal interest in the subject property. He also claims that the notice of termination was technically defective. This last matter is easily dealt with, as Mr. Kwasnik expressly disclaimed any objection on the basis of notice at the hearing. He waived this defense by failing to pursue it below.

The question of jurisdiction is resolved just as easily. Ms. Karnes and Mr. Kwasnik were never married and have no children, so Title 19-A governing domestic relations does not apply. Despite Mr. Kwasnik's protests to the contrary, he never had a legal relationship with Ms. Karnes and their romantic relationship has no bearing on this action. This is "a summary proceeding to determine the single issue: who is entitled to the immediate possession of the property." *Frost Vacationland Props., Inc. v. Palmer*, 1999 ME 15, ¶ 8, 723 A.2d 418, 421. The District Court found that Ms. Karnes is the only person so entitled, and this court agrees.

4

Mr. Kwasnik bases his claim to the property on estoppel. Estoppel is generally understood as "the principle which precludes a party from asserting to another's disadvantage a right inconsistent with a position previously asserted by him." *Begin v. Sabattus*, 409 A.2d 1269, 1271 (Me. 1979) (quoting 28 Am. Jur. 2d § 29) (quotations omitted). In particular, the "'doctrine of promissory estoppel 'applies to promises that are otherwise unenforceable,' and is 'invoked to enforce [such] promises . . . so as to avoid injustice.'" *Harvey v. Dow*, 2008 ME 192, ¶ 11, 962 A.2d 322, 325 (quoting *Daigle Commercial Group, Inc. v. St. Laurent*, 1999 ME 107, ¶ 14, 734 A.2d 667, 672).

Mr. Kwasnik himself denies that the parties ever had an agreement to share responsibility for the expenses of property ownership. (Tr. at 35–36.) Despite this, he also testified that when the deed was issued in Ms. Karnes's name, they "had [an] agreement that it [was] our house and . . . it's gonna [sic] be for—for us." (Tr. at 41.) At most, Mr. Kwasnik describes a vague understanding of present fact in 2006. Mr. Kwasnik knew, however, that Ms. Karnes was the sole titleholder. He had purposefully kept his name off the title documents. Mr. Kwasnik does not claim that Ms. Karnes induced him to keep his name off the title documents, nor does he describe any words of transfer from Ms. Karnes to himself, nor does he allege that she promised to transfer him a legal interest in the estate at some future point.

The fact that Ms. Karnes executed a will bequeathing the house to Mr. Kwasnik could not create a new present interest in the premises. Wills may be freely revoked, and no interest vests until death. *Hutchins v. Hutchins*, 141 Me. 183, 189, 41 A.2d 612, 615 (1945). The only relevance Ms. Karnes's will could have

5

to this action is that it refers to the whole of the subject real estate as her own property.[3] (Kwasnik Aff. at 8.)

Mr. Kwasnik's efforts to improve the property likewise cannot make him a tenant-in-common with Ms. Karnes. His labor was not offered as consideration for an interest in the land. Mr. Kwasnik complains that Ms. Karnes will be unjustly enriched by his work if he is evicted. The court is hard-pressed to credit this argument when Ms. Karnes alone paid for the mortgage, utilities, gas, groceries, building materials, and Mr. Kwasnik's other incidents of living for approximately five years.

Finally, at the end of the hearing the District Court had the following exchange with Mr. Kwasnik:

> COURT:        Okay. And what was the promise?
>
> MR. KWASNIK: Promise basically was with the house is both of us.
>
> (PAUSE)
>
> COURT:        And you think that meant that if you split up that that was still true?
>
> . . . .
>
> MR. KWASNIK: . . . The only thing which we actually—what I kind of thought—I proposed [to Ms. Karnes] that—that our agreement will be—whatever she is on the record vested in, that I will have—fifty percent of—of that will be unto me. That was the only agreement—

(Tr. at 46.)

The District Court implicitly found that Mr. Kwasnik could not reasonably have relied on this so-called agreement, and did not. This court finds no error with the District Court's reasoning on this or any other point.

---

[3] The property at 88 Peaked Mountain Rd. had formerly been identified as 120 Peaked Mountain Rd. (Tr. at 9.)

**The entry is:**

Mr. Kwasnik's request for a jury trial de novo and his motion to stay the issuance of a writ of possession are denied. The judgment of the District Court granting Linda Karnes possession of 88 Peaked Mountain Road, Sebago, Maine, is affirmed, and the clerk is directed to issue a writ of possession.

DATE: April 28, 2011

Roland A. Cole
Justice, Superior Court

7

Date Filed __02-08-11__  Cumberland  Docket No. ___AP-11-06___

County

Action ___Forcible Entry And Detainer Appeal___

LINDA E. KARNES

MAREK A. KWASNIK
PO BOX 2065
WINDHAM, ME 04062

vs.

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| ALICIA M. CUSHING, ESQ.<br>GIVERTZ, SCHEFFEE, & LAVOIE, PA<br>PO BOX 4801<br>PORTLAND, ME 04112 | pro se |

Date of
Entry